Edward Daniel **BARTON**, a/k/a Eddie Barton, Appellant,

v.

**STATE of Oklahoma, Appellee.**

**No. A–17237.**

Court of Criminal Appeals of Oklahoma.

Nov. 8, 1972.

Jan Eric Cartwright, Muskogee, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., James E. Briscoe, Legal Intern, for appellee.

1. "We are here to see that the people of the State of Oklahoma, and the defendant, each get a fair, honest and impartial trial."

## OPINION

BUSSEY, Presiding Judge:

Edward Daniel Barton, a/k/a Eddie Barton, hereinafter referred to as the defendant, was charged, tried, and convicted in the District Court of Muskogee County, Oklahoma for the offense of Receiving Stolen Property; his punishment was fixed at one (1) year in the county jail and a Five Hundred Dollar fine ($500.00), and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Ernest Vallier testified that he purchased an Imperial horse trailer on October 10, 1970, for Twelve Hundred Dollars ($1,200.00). The trailer was stolen from his residence in Tulsa sometime between 10:00 p. m. the night of May 3, 1971, and 7:00 a. m. the morning of May 4, 1971. He immediately reported the theft to the Tulsa Police Department. He testified that the trailer, which was new, had a retail price of Sixteen Hundred Seventy-Five Dollars ($1,675.00), and that he had bought it at a good price because the company wanted to get out of the trailer business. Vallier testified that he placed a small electrical wire under the padding in the back of the trailer so that he could identify it in the event that it was stolen. He next saw the trailer on May 17, 1971 at a paint shop on the outskirts of Muskogee. He testified that the trailer had been painted white, that the serial number had been removed, and the serial sign had been replaced by an "Okie" sign. He testified that it was common practice in the horse trailer industry not to give a title when transferring or selling the trailers.

Larry Anderson testified that he operated a painting business southeast of Muskogee, and that on the afternoon of May 14, the defendant came to his place of business and asked if he could paint a horse trailer. Defendant stated that he wanted the horse trailer painted to match his and his partner's truck, and could not decide what color to paint it. Anderson suggested that he paint it white. Defendant agreed to pay him Twenty-Five Dollars for the paint job. Defendant returned that evening and left the trailer to be painted. Barton stated that he had tried to paint it himself and had messed it up; he testified that while sanding it, he discovered that the top, which was originally blue, had been painted red. On May 15, Sheriff Vinzant and Deputy Jackson inspected the trailer and took some pictures of it. Defendant returned for the trailer on May 17, with the codefendant Lamascus. He was paid Twenty-Five Dollars by Lamascus and they left. Anderson testified that, in his opinion, when the trailer was originally brought to him only the top needed painting.

Deputy Jackson testified that he received a call on May 15, concerning a horse trailer and that he proceeded to Anderson's Paint Shop. He inspected the trailer and called Sheriff Vinzant. Upon the sheriff's arrival, they further inspected the trailer and discovered the hidden serial number. They called Mr. Vallier in Tulsa, and accompanied him to the paint shop where he identified the trailer. Vallier and Deputy Jordan kept the paint shop under surveillance until the defendant and Alfred Lamascus picked it up, when they were subsequently placed under arrest shortly after leaving the premises. Upon arrival at the jail, Deputy Jordan advised the defendant of his constitutional rights, and further advised the defendant that he should not talk to him, but rather that he should call a lawyer.

The defendant stated that he wanted to explain the situation to Deputy Jackson and then explained that he purchased the trailer from Pete English at Stilwell, Oklahoma. Defendant stated that he had two checks in his possession with which he had paid English for the trailer. The checks were examined, one of which was dated April 8, in the amount of Two Hundred Dollars ($200.00) and was marked with the notation "For loan." The second check was dated May 3, in the amount of Two Hundred Dollars ($200.00) and also stated

"For loan." Both checks were made payable to Pete English.

Deputy Jordan testified that he assisted Deputy Jackson in arresting the defendant and Lamascus. Sheriff Vinzant testified concerning the investigation at the paint shop and finding the hidden serial number.

The defendant testified that he had been acquainted with Vernon Pete English for approximately ten years, that he had previously sold the defendant watermelons, and that he would see him occasionally. English called him sometime the first part of April, stated that he was in a "jam," and that he wanted "Ten or Eleven Hundred Dollars." Defendant told English that he could not loan him that kind of money because he was trying to buy a horse trailer, but stated that he would loan him Two Hundred Dollars, if that would help. On April 4, he gave English the check for Two Hundred Dollars, which was marked "Loan." The following month, English called him, stating that his wife had gotten a divorce and gone to Arkansas, and stated that he would sell defendant his trailer. Defendant inquired what kind of trailer it was, wherein English replied that it was practically a new trailer, and that he would sell it for Eight Hundred Fifty Dollars ($850.00). On the morning of May 4th or 5th, the defendant went to his farm and first saw the trailer. One of the boys at the farm stated that a man dropped it there that morning and said, "Tell Eddie here's his trailer, and then call me." Later that morning defendant received a call from English to ask him how he liked the trailer, and defendant subsequently met English and gave him another Two Hundred Dollar check, on which he had already written "Loan." English asked him if he would pay him the rest of the money in cash. He went to his bank and cashed a Four Hundred Dollar ($400.00) check. He testified that he had Fifty Dollars ($50.00) cash in his pocket, and that he gave the Four Hundred Fifty Dollars ($450.00) to English in payment for the trailer. He used the trailer numer-ous times, and while doing so, scratched the top on some trees. Defendant attempted to cover the scratches by painting the top with a can of red spray paint. After receiving several complaints about how horrible the trailer looked, a friend told him that if he would have the trailer painted that he would pay for it. He then took the trailer to Larry Anderson to have it painted. Defendant testified that he did not have any idea that it was a stolen trailer.

■■■ The first proposition asserts that the verdict was not sustained by sufficient evidence. We have consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and to determine the facts. Jones v. State, Okl.Cr., 468 P.2d 805 (1970). We are of the opinion that the evidence, although circumstantial, was competent to support the jury's verdict. We, therefore, find this proposition to be without merit.

■■■ The final proposition contends that the prosecuting attorney asked improper questions on the cross-examination of the defendant. We have carefully examined the alleged improper questions and observe that only in one instance did the defendant object, and that being on the ground that the question was argumentative. The trial court overruled defendant's objection, but cautioned the prosecuting attorney to "move along." In Robison v. State, Okl. Cr., 430 P.2d 814, we stated that when an objectionable statement is made by prosecution, it should be called to the attention of the court by timely objection, together with a request that the jury be instructed to disregard the improper statement and, in the event objection is overruled, an exception should be taken to the ruling of the court, preserved, and argued in a motion for new trial. In addition, we pointed out

that when an objectionable statement is made by prosecution, but is not called to the attention of the court, matter cannot be presented for the first time in a motion for new trial, nor in the petition-in-error or the briefs on appeal. Although this proposition is improperly before this Court, we are of the opinion that the cross-examination of the defendant was proper. Judgment and sentence is affirmed.

BRETT, J., concurs.