**Reva PULLIN, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–17865.**

Court of Criminal Appeals of Oklahoma.

April 3, 1973.

Rehearing Denied April 30, 1973.

Robert E. Walker, Harold Worland, and David Davis, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Reva Pullin, hereinafter referred to as defendant, was charged and tried in the District Court of Lincoln County, Case No. CRF–71–31, with the offense of Assault With Intent to Kill. She was found guilty by a jury of the lesser offense of Assault With a Dangerous Weapon. Her punishment was fixed at two (2) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Henry Musgrove testified that he was a farmer and lived Northeast of Kendrick. The defendant owned some land adjacent to his property and they had had trouble in the past with her cattle trespassing on his property. On the morning of April 9, 1971 he observed some of the defendant's cattle in his oat field. He

called his neighbors, Mr. and Mrs. Mathis, to help him drive the cattle out of his field. He and Mr. and Mrs. Mathis drove across the field in Mathis' pickup. He observed the defendant coming out of the woods carrying a pistol in her hand. He got out of the passenger side of the pickup and the Mathises got out of the driver's side. Defendant continued to come toward them and said, "She was gonna kill all us god-damn-titty-pullin' sons-of-bitches." (Tr. 14) He observed the defendant's mother coming across the pasture from the north with a shotgun. Defendant pointed the gun at Lloyd Mathis and said, " 'I'll just kill you', and she just pulled it around like that and aimed right at his stomach". (Tr. 15) She fired two shots at Mathis. Her mother arrived at the scene and took the gun away from the defendant. The defendant then came at Minnie Mathis with a pair of wire pliers and a sheetrock knife and tried to hit her. Lloyd put his hand up and blocked the blow. Defendant then left the scene and drove her cattle back into her pasture.

Lloyd Mathis testified that on the morning in question Mr. Musgrove called and asked him to help get the defendant's cattle out of his field. He and his wife went to Musgrove's house and picked him up. They then proceeded across the oat field. he observed the defendant come out of the timber with a gun and a pair of pliers in her hand approximately one hundred and fifty feet away. He stopped the pickup approximately twenty-five feet from the defendant. Musgrove asked defendant to get her cattle off of his property and to keep them off. Defendant stated, " 'I'll kill every god damned one of you son-of-bitches' ". (Tr. 48) They got out of the pickup and the defendant continued to call them obscene names and threatened to kill them. The defendant fired two shots at him from a range of approximately fifty feet. He testified that he was standing about ten feet from the pickup when the shots were fired. The defendant said if they didn't get off she would kill them. Defendant's mother arrived and took the

pistol away from her. The defendant then tried to attack his wife with a pair of pliers. He threw up his hand and caught the blow. The defendant's mother then said, " 'Come up there to the line and we'll have this out, 'cause somebody is gonna get killed' ". (Tr. 51) He testified that he had had previous problems with the defendant. The defendant was aiming "right at me about my hips" when she fired the shots.

The testimony of Minnie Mathis did not differ substantially from the testimony of her husband. She denied calling the defendant or the defendant's mother obscene names.

Harold Smith testified that he delivered a truck load of hay to the defendant's farm on the morning in question. The defendant stated that she was going to go look for some missing cattle. While he was unloading the hay, he heard some loud talking in the distance and heard a noise that sounded like a "pop". He testified that the wind was blowing approximately thirty miles-per-hour and that he was some distance from the location of the noise.

The defendant testified in her own behalf that she owned eighty acres which adjoined Musgrove's property. On the morning in question, she called Mr. Smith around 7:00 from Tulsa and when she arrived at the farm, Smith was already there. Smith informed her that some of her cattle were missing. She found the cattle and started driving them back to her property. She was driving the cattle, she heard Mathis honking his horn. She fired a shot to keep the cattle moving. Musgrove yelled out the window, "You're trespassing on my property, get off." Mathis tried to run over her with the pickup and she jumped back. She started toward the fence to let the cattle through and Mathis and his wife started running after her. She called Mathis "his pet name" because two or three years earlier he had grabbed her breast. She told Mathis and his wife to leave her alone and Mathis called her an obscene name. She kept running back and

Mathis said, "Fire—I dare you, fire, fire, I dare you, fire." She fired one shot into the ground. Her mother came up and told her several times to give her the gun. She handed the gun to her mother butt first. Mrs. Mathis started calling them obscene names and she reached to get her. She denied having any weapon in her hand. Mr. Mathis hit her as she reached for his wife. Her mother told her to go on and get the cattle and she left. She testified about prior difficulties she had with Mathis. She testified that she was experienced with the pistol and could hit what she was shooting at.

Audrey Schrum testified that she was the defendant's mother and was present on the morning in question. Her testimony did not differ substantially from the testimony of the defendant.

■ The first proposition asserts that "the conduct of the District Attorney and State's witnesses interjecting prejudicial remarks impaired defendant's right to a fair and impartial trial." Defendant argues that the testimony implying that the defendant was the type of person who was a perennial trespasser onto her neighbor's property was an attempt to impeach her character prior to her ever having been placed on the witness stand. We have carefully examined the alleged improper testimony and observe that only on one occasion did the defendant object to the questioning. In that instance, the trial court sustained the objection and admonished the jury not to consider the answer. In dealing with a similar proposition in the recent case of Barton v. State, Okl.Cr., 503 P.2d 234, we stated:

"* * * We have carefully examined the alleged improper questions and observe that only in one instance did the defendant object, and that being on the ground that the question was argumentative. The trial court overruled defendant's objection, but cautioned the prosecuting attorney to 'move along.' In Robison v. State, Okl.Cr., 430 P.2d 814, we stated that when an objectionable statement is made by prosecution, it should be called to the attention of the court by timely objection, together with a request that the jury be instructed to disregard the improper statement and, in the event objection is overruled, an exception should be taken to the ruling of the court, preserved, and argued in a motion for new trial. In addition, we pointed out that when an objectionable statement is made by prosecution, but is not called to the attention of the court, matter cannot be presented for the first time in a motion for new trial, nor in the petition-in-error or the briefs on appeal. * * *"

■ The second proposition contends that the trial court erred in failing to instruct the jury as to the lesser included offense of Reckless Conduct While in Possession of any Rifle or Pistol. The record reflects that the trial court instructed the jury as to Shooting With Intent to Kill, Assault With a Dangerous Weapon, Simple Assault and Self-defense. The record further reflects that the defendant did not object to the court's instructions nor did he submit requested instructions to the court for consideration. We have consistently held that where counsel is not satisfied with instructions that are given, or desires the court to give any particular instruction, or to more definitely or sufficiently state any proposition embraced in the instructions, the duty of counsel is to prepare and present to the court such desired instruction and request that it be given. In the absence of such a request, the Court of Criminal Appeals will not reverse the case if the instructions generally cover the subject matter of inquiry. Schapansky v. State, Okl.Cr., 478 P.2d 912. We are of the opinion that the instructions given by the trial court generally cover the subject matter of inquiry. We, therefore, find this proposition to be without merit.

■ The final proposition asserts that the verdict is excessive and appears to have been given under the influence of passion or prejudice. We need only ob-

serve that the evidence would have supported a conviction for Shooting With the Intent to Kill wherein the jury chose to find the defendant guilty of the lesser offense of Assault With a Dangerous Weapon. Under such circumstances, we are of the opinion that the sentence of two years imprisonment is not excessive.

The judgment and sentence is, accordingly, affirmed.

BLISS, P. J., and BRETT, J., concur.

Rehearing Denied April 30, 1973.