**James Madison FUTERLL, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–17184.**

Court of Criminal Appeals of Oklahoma.

Jan. 19, 1972.

Rehearing Denied Feb. 28, 1972.

Don Anderson, Public Defender, Oklahoma, for plaintiff in error.

Larry Derryberry, Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge:

James Madison Futerll, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Oklahoma County, Oklahoma for the offense of First Degree Rape, After Former Conviction of a Felony. His punishment was fixed at thirty-five (35) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, May Roy testified that on April 23, 1971, she visited her daughter at the University Hospital in Oklahoma City. Upon leaving the hospital at approximately 2:00 o'clock p. m., with her four-year-old great-granddaughter, she proceeded to her car, which was parked on Twelfth Street. As she reached the car, a colored male, whom she identified in court as the defendant, put a pistol in her·side and told her to get in the car and to drive to Fourth Street. She got in the driver's seat, with her great-granddaughter on the passenger's side, and the defendant in the rear seat behind Mrs. Roy. At the defendant's direction, she drove to an abandoned church, and then to an abandoned house with a tall hedge all around the front. Defendant ordered them into the house, and required Mrs. Roy to tie the little girl's hands with the child's jacket which she had shredded. He gagged the child with a strip of the jacket, and bound Mrs. Roy's hands and feet. He struck her on the thigh with the pistol, forcing her legs apart, and committed an act of sexual intercourse. He then turned her on her stomach, and "went ahead with the back just like he did the front." (Tr. 15) He then left in Mrs. Roy's car. She untied

herself and her great-granddaughter, and went to a nearby house and called the police. She next observed her car the following day about 11:00 o'clock a. m. behind Douglass High School. She testified that the defendant was wearing two gold rings, one on the middle finger of each hand.

Officer Stearns testified that he answered a call at 1336 Northeast Sixth Street in Oklahoma City on the day in question, and talked to Mrs. Roy. She took him to an abandoned house at 623 North Kate, whereupon he observed a nylon jacket torn into strips, and a wet substance on the floor, which appeared to be sperm.

Officer Riggs' testimony did not differ substantially from that of Officer Stearns.

Officer Jackson testified that he discovered a 1965 black over white Chevrolet back of the Douglass High School on April 24, which Mrs. Roy subsequently identified as hers. He called the police crime lab technicians.

Officer Connelly of the police crime laboratory testified that he dusted the Chevrolet for fingerprints, and lifted a number of latent fingerprints. One of the fingerprints taken from the left rear door of the vehicle was, in his opinion, identical to a known print of the defendant's left middle finger.

Defendant testified that on April 23, he went to the Blood Donation Center on West Main Street in Oklahoma City at approximately 11:00 o'clock a. m. After giving blood, he left at about 2:00 o'clock p. m., and walked to his home at 704 Northeast Kelham, arriving somewhere after 3:00 o'clock p. m. He denied assaulting Mrs. Roy, and denied having seen her before the Preliminary Hearing. He admitted two prior felony convictions.

Corrine Brown testified that she was the defendant's grandmother, and that he had lived in her home since infancy. On the afternoon in question, he arrived home a little before 3:15 p. m. She testified that

he owned no clothes matching the description related by Mrs. Roy.

Linda Minders testified that she was employed at the Blood Plasma Center at 505 West Main, and on April 23, the defendant appeared and donated blood. From the number of the record reflecting payment to defendant, she estimated he was paid between 1:45 and 2:15 o'clock p. m. On cross examination, she testified that she had no independent recollection of when the defendant actually left the center, and that it could possibly have been as early as 1:30 o'clock p. m.

In rebuttal, Officer Hervey testified that he advised the defendant of his rights against self-incrimination on April 29, in the Oklahoma City Jail.

Defendant stated that he had given blood and stopped by a friend's house, and arrived home around "3:00 o'clock in the evening." (Tr. 81)

 The first proposition asserts that the verdict is not supported by the evidence. We have consistently held that where there is competent evidence in the Record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence, and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and to determine the facts. Jones v. State, Okl.Cr., 468 P.2d 805.

 The final proposition contends that the punishment is excessive. Suffice it to say, that from the foregoing statement of facts, we cannot conscientiously say that the punishment imposed shocks the conscience of this Court.

In conclusion, we observe that the Record is free of any error which would justify modification or require reversal. The judgment and sentence is affirmed.

BRETT, J., specially concurs.

SIMMS, J., concurs.

BRETT, Judge (specially concurring):

Several offenses arose out of this course of events, each of which was filed under separate Informations. I believe the several offenses should have been included in one Information under separate counts. Two of the offenses being capital might have resulted in even more severe punishment. But, because punishment is warranted, I specially concur.