Charles CALLINS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–16771.

Court of Criminal Appeals of Oklahoma.

Sept. 6, 1972.

Don Anderson, Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., Yvonne Sparger, Asst. Atty. Gen., for appellee.

## OPINION

SIMMS, Judge:

Appellant was convicted in the District Court of Oklahoma County, Oklahoma, of the crime of Rape in the First Degree, After Former Conviction of a Felony, in a two-stage proceeding, and sentenced to the term of One Thousand Five Hundred (1500) Years in the state penitentiary, in accordance with the jury verdict. From the judgment and sentence in the case, appellant has perfected a timely appeal to this Court.

At trial, the alleged victim of the rape testified she was 19 years of age. On September 19, 1970, she left home for work about 6:15 A.M., driving a 1969 model light blue Mustang with a dark blue vinyl top. She parked at Third and Broadway in Oklahoma City about 7:45 A.M., and as she was getting out of her automobile, was approached by a man whom she identified in court as the defendant. The man produced a knife with a five or six inch blade and ordered her back into the car, threatening to cut her head off if she did not obey. He told her to give him her car keys, that two persons were chasing him, that he wanted to get to his side of town and would then let her out. Appellant drove east on Third Street, passing Washington Park, finally reaching Coltrane Road, which the victim recognized by a road sign. Appellant drove on Coltrane a short distance, then turned off into something like an oil lease, "just kind of woody," crossing a cattle guard. Appellant pulled victim out of her automobile, and told her take off all her clothes. She refused, whereupon appellant removed her clothes. With the knife at her throat, appellant then laid her on the hood of the car, covered her face with his shirt, and committed an act of sexual intercourse upon her. He then drove off in the victim's car saying: "Well, if you tell the cops . . . I'll come and I'll kill you" (Tr. 62). She dressed, started walking down the highway when she was picked up by a male passer-by, who took her to a filling station and called the police. When the officers arrived, she directed them to the scene of the assault, then they took her to the hospital. She attended a police line-up and pointed out defendant as the one who had raped her. When she later got her car back, it had been painted yellow.

Officer Lippe, of the Oklahoma City Police Department, testified that on September 19th he answered the call from the filling station and talked to the victim, who took him to the scene of the assault. He then took her to the hospital. He obtained the tag number of her automobile, YB–3264, and a stolen car report was issued.

William Robert Prescott, III, testified that he was an insurance adjustor and in October, 1970, learned that the victim's automobile was impounded at Northwest Wrecker Service. He inspected the automobile for damage and found State's Exhibit's numbered 1, 2, 3, and 4, on the floorboard of the automobile. State's Exhibit Number 1 was an Oklahoma Highway Patrol citation issued to a Melvin R. Cizek, for improper stopping on a roadway of a 1969 Ford 2-dr. bearing Oklahoma license YB–3264. State's Exhibit Number 2 is a photograph. State's Exhibit Number 3

was a receipt issued by a dry cleaning establishment to a Charles Callins. State's Exhibit Number 4 is a wrecker service invoice, reflecting that a 1969 Mustang bearing tag number YB–3264 was pulled in from a location on Interstate–35. I–35 is the location where the Oklahoma Highway Patrolman issued the citation. Witness Prescott testified the exhibits were delivered to the police. That when he observed the automobile, the body was painted yellow. The tag number and automobile serial number checked to the victim.

Trooper Johnson of the Oklahoma Highway Patrol, testified that on October 3, 1970, he was patroling Interstate–35, North, and had occasion to issue a citation, State's Exhibit 1, for improper stopping on the roadway to one who had a driver's license bearing the name of Melvin Cizek. He identified defendant in court as the one who produced the Cizek driver's license. The car license was YB–3264 and the car a 1969 Mustang, with dark vinyl top over a yellow body.

Officer Hooten, of the Oklahoma City Police Department, testified that he investigated the case and caused charges of rape and robbery to be filed against defendant, after which, on October 14, 1970, defendant's mother brought defendant to Hooten's office "to get it straightened out." (Tr. 96)

Appellant did not testify or offer evidence in his behalf.

■ Appellant's assertion of error I, that the sentence of 1500 years constitutes cruel and unusual punishment; III, the sentence deprives defendant of equal protection of the law; and IV, the 1500 year sentence is an encroachment upon the executive branch, were each discussed in depth in Fields & Phillips v. State, Okl.Cr., 501 P.2d 1390, 43 O.B.J. 2109, where we held a 1000 year sentence for the crime of rape in the first degree, after former conviction of a felony, was not cruel and unusual, in its constitutional sense. Also, that such a sentence does not deprive a defendant of equal protection of the law, and was not an encroachment upon the executive authority of the state.

■ Appellant's fifth assertion of error complains of prejudicial inflammatory argument to the jury on the part of the prosecuting attorney. An examination of the final arguments of prosecuting attorney, as contained in the trial transcript, reflects that no objection was made by defense counsel to any portion of the closing argument made by the district attorney. The rule of law is well settled in Oklahoma that the accused's counsel must not only object to improper statements of the district attorney in his closing argument, but he must move the trial court to exclude such remarks from the jury and instruct them not to consider them for any purpose, unless remarks are of such character that error would not be cured by withdrawal thereof. Daves v. State, 77 Okl.Cr. 343, 141 P.2d 603. An objectionable statement made by the prosecution was not called to the attention of the court, is not a matter that could be presented for the first time in a motion for new trial and in petition in error and briefs upon appeal. Robison v. State, Okl.Cr., 430 P.2d 814.

■ Appellant's assertion of error II is that the 1500 year verdict is excessive. The subject of excessive sentence was thoroughly discussed in Fields, supra, wherein we pointed out that sentences beyond the normal span of an appellant's life expectancy were not so excessive as to shock the sense of mankind. Recognizing, as well, that the sentence imposed by the jury in the instant case is, for all practical purposes, a life sentence, and in view of the Pardon and Parole Board's policy, is the same as set forth in their Rules filed with the Secretary of State, we find the jury's verdict was proper and should stand.

The judgment and sentence is, and the same is hereby, affirmed.

BRETT, J., specially concurring in part, dissenting in part.

BUSSEY, P. J., specially concurring.

BRETT, Judge (concurs in part, and dissents in part) :

I concur that the judgment in this case should be affirmed, but I cannot agree that the 1500 year sentence should be left undisturbed. I believe the sentence is patently excessive.

While in Fields & Phillips v. State, supra, I merely recited that I would modify the sentence to life imprisonment, it was assumed that I approved the 1,000 year sentence in that case. Consequently, I am compelled in this case to specifically state that I do not see the relevancy of affirming a sentence of either 1,000 years, or one of 1,500 years. I feel certain that this Court would modify a jury sentence which imposed three life sentences on a convicted person for one offense, and would probably recite that such a sentence exceeds the limits of punishment set by the legislature. At the same time, it is generally recognized that not many people live more than a hundred years; but nonetheless in the instant case this Court is approving a sentence of more than fifteen life sentences for the single offense. The decision in Fields & Phillips, supra, states, "However, the practicalities of life compel us to observe that a sentence of 1,000 years is, *for all intent and purposes, a life sentence.*" (Emphasis added.) Such being the practicality of life, this Court should act within its wisdom and cause the sentence to reflect "life imprisonment." Whatever the message was that the jury was attempting to convey, it served its purpose when the press released the story. If that message was that there should be authority to sentence one to life imprisonment without possibility of parole, then it should be made directly to the State Legislature, and not to this Court. It is within the authority of the legislature to establish limits of punishment, not this Court.

Approval of this sentence seems to be predicated upon the provisions of 21 O.S. 1970, § 62, as follows:

"Whenever any person is declared punishable for a crime by imprisonment in the penitentiary for a term not less than any specified number of years, and no limit to the duration of such imprisonment is declared, the court authorized to pronounce judgment upon such conviction may, in its discretion, sentence such offender to imprisonment during his natural life, or *for any number of years not less than such as are prescribed.*" See: Fields & Phillips v. State, supra, (Emphasis in original.)

However, as I interpret that section, the phrase "during his natural life," sets the maximum limit for punishment. If that is correct, then it becomes the duty of this Court to apply the law with some reason. This is true, notwithstanding my statement in Seibert v. State, Okl.Cr., 457 P.2d 790, 794, wherein I recited, "Consequently, applying such analysis to the facts of the case under consideration, the punishment [of 150 years] is not so excessive as to shock the sense of mankind." Knowing what I know now, I would modify that sentence to life imprisonment. And I concede further that the facts in the instant case are so heinous as to cause anyone of ordinary sensibilities to feel that this offender should be taken off the streets permanently; but notwithstanding, it is the duty of appellate courts to apply the law with reason, and not to be guided by emotions, as the jury was. Also, insofar as no apparent bodily harm was done to the complaining witness in the instant case, I doubt that a 1,500 year sentence would have been imposed on a "white man," under identical circumstances.

I concede also that Haskins v. United States, 433 F.2d 836 (10th Cir. 1970), recites: "[I]t is elementary that ordinarily a sentence will not be disturbed on appeal nor considered as cruel and unusual punishment if it is within statutory limits." However, I fail to find any authority in the Oklahoma Statutes which authorizes a penitentiary sentence in excess of life imprisonment, notwithstanding the position of my colleagues.

Defendant's fifth assertion of error, in which he complains of a prejudicial inflammatory argument to the jury, is denied because no objections were made. As I view those arguments in the second stage proceedings, they were so fundamentally erroneous that no objection was necessary. Considering that the jury had been qualified for the death penalty; and that "Rape in the first degree is punishable by death or imprisonment in the penitentiary, not less than five (5) years,"[1] the prosecutor was permitted to subtly comment on the actions of the Pardon and Parole Board when he said, "This man should live the rest of his natural life if you don't give him death in the state penitentiary. The law says there is no maximum. It may take a million years to keep him in there that long, I don't know."[2] And later he said, "And if it takes fifteen hundred years of penalty to do this that is what we want you to give him."[3] So, the jury returned its verdict assessing the 1,500 year penitentiary sentence.

In my opinion, when trial courts permit and accept jury verdicts of excessive punishment, as the one in the instant case, and in Fields & Phillips v. State, supra, it makes a mockery of the jury system; and, it constitutes the first step in the abolition of the jury system; and further, when appellate courts approve such ridiculous verdicts they only magnify that mockery and perpetuate the travesty of justice. It should be remembered, a just society is not judged by how it treats its best citizens, but instead, how it treats its worst citizens. In the instant case there is no possible way for the sentence to be satisfied, unless upon defendant's death his embalmed body is placed upon the cell bunk for the balance of the 1,500 years.

Therefore, while I agree that this conviction should be affirmed, I respectfully dissent to the sentence, because in my opinion, it is patently excessive and violates the Oklahoma Constitution and Statutes. I would modify this sentence to life imprisonment.

BUSSEY, Presiding Judge (specially concurring):

I am in accord with the view of Judge Simms that the imposition of a 1,500 year sentence does not violate the constitutional prohibition against cruel and unusual punishment and that the imposition of such a sentence is not excessive. Judge Simms makes it crystal clear that in light of the Pardon and Parole Board Rules, filed with the Secretary of State, for the purpose of considering appellant for parole, the sentence imposed is treated as a life sentence.

Judge Brett asserts that "there is no possible way for the sentence to be satisfied, unless upon defendant's death his embalmed body is placed upon the cell bunk for the balance of the 1,500 years." There are many instances in which persons sentenced to the penitentiary have died prior to completing the sentence imposed, and I am not aware of any instance in which the embalmed body was kept in the prison cell until the sentence imposed was satisfied. This argument is as specious as the assertion that a 1,500 year sentence would not have been imposed on a "white man." There is not one scintilla of evidence in the record to support this conclusion. Even Judge Brett's dissent concedes that the appellant should be "taken off the streets permanently."

I believe the jury, like this Court in the past and as presently constituted, was color-blind. Whether this offense had been committed by a white man, a black man, or by one of my Indian brothers, and the same sentence imposed, I would have no hesitation in concurring in the opinion of Judge Simms.

---

1. 21 O.S.1970, § 1115.

2. Transcript of Evidence, page 131.

3. Ibid, 132.