**James Madison FUTERLL, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–17330.**

Court of Criminal Appeals of Oklahoma.

Sept. 28, 1972.

Carroll Womack, Asst. Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., Mike Jackson, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, James Madison Futerll, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County, Oklahoma, for the offense of Kidnapping, After Former Conviction of a Felony; his punishment was fixed at three hundred (300) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Mary Roy testified that on the afternoon of April 23, 1971 she and her four-year-old great-granddaughter, Cynthia Harwell, were visiting her granddaughter who was afflicted with terminal cancer and confined in the University Hospital in Oklahoma City. They left the hospital at approximately 2:00 p. m. and while they were walking to their car, parked on 12th Street, they were stopped by the defendant who had a gun. He marched she and Cynthia to her car and he got in the back seat. He told her to drive to some vacant houses on Fourth Street and she obeyed. He directed her to park behind some hedges near an old abandoned house. He marched them into the house and upon entering, ordered her to tie Cynthia's hands with an old nylon fishing cord. Cynthia began crying and the defendant pointed a gun at her and told her to make the child shut up. Defendant took off Cynthia's blazer jacket, tore it into strips, gagged Cynthia and tied both she and Cynthia with the strips. Defendant thereafter fled in Mrs. Roy's automobile. She freed herself and ran across the street to a house and had them call the police. The next time she saw her car it was at the back of Douglass High School. She testified that she studied the defendant's face very carefully because she "figured he was going to kill us from what he said." According to Mrs. Roy, the defendant was wearing band rings, one on each middle finger.

Officer Jackson testified concerning recovering Mrs. Roy's car which was parked just south of Douglass High School football stadium.

Officer Connelly, a fingerprint expert, testified that he processed Mrs. Roy's car for fingerprints. He obtained a latent fingerprint from the back door behind the driver's seat. Subsequently, he compared the latent fingerprint with a known specimen of the defendant's fingerprints and that, in his opinion, the fingerprint which was lifted from the vehicle was that of the defendant.

Officer DeLaughter testified that he arrested the defendant on April 28, 1971 and the defendant had two rings on his person when he was arrested.

Officer Riggs testified concerning finding physical evidence at the scene.

For the defense, Corine Brown, defendant's grandmother, testified that on the morning in question the defendant left home at approximately 11:00 and was going to the blood bank. She testified that he returned home around ten minutes after three. She testified that she did not remember him wearing two rings.

Linda Minors testified that she was employed at the Blood Plasma Center in Oklahoma City. Further, she testified that the defendant gave blood on the 23rd day of April 1971 and that he left the blood bank some time between 1:30 and 2:00 p. m.

She was estimating the time but, in her opinion, it was probably closer to 2:00.

The second stage proceeding evidence was introduced to reflect that the defendant had previously been convicted of Unauthorized Use of a Motor Vehicle and Burglary in the Second Degree.

■ The first proposition asserts that the trial court erred in overruling defendant's motion to abate or dismiss the cause. Defendant's motion to dismiss was based on the ground that the instant case grew out of the same transaction where the defendant was convicted of raping Mary Roy, which has subsequently been reviewed by this Court and affirmed in Futerll v. State, Okl.Cr., 493 P.2d 1139. We are of the opinion that the trial court properly overruled defendant's motion to abate. The two offenses are separate and distinct crimes, each requiring dissimilar proof of their several elements. In Tucker v. State, Okl.Cr., 481 P.2d 167, we stated:

" * * * We are of the opinion that the fact the crimes were committed in rapid succession does not negate the ultimate fact that separate crimes were committed. To hold otherwise would open the door for persons to commit any number of crimes simultaneously, knowing they could only be punished for one. * * * "

■ The final proposition contends that the punishment is excessive and was returned as the result of passion and prejudice. Defendant argues that, although there was no direct testimony that the grandmother was raped, it was made quite clear to the jury that the rape did occur. The record reflects that in the Assistant District Attorney's opening statement he related that the witness would testify that she put her clothes back on. Defendant moved for a mistrial, which was overruled with the admonishment that the prosecutor would make no further reference to the other crime. The record further reflects that Mary Roy testified on direct examination as follows:

"Q. Did he have your hands tied?

"A. Yes, he had my hands tied, and he had my feet tied, when he had us to sit down on the floor up against the wall, and when he done that, that's when he went to taking my clothes off.

"Q. Don't go any further, and tell us what happened when he got ready to leave, if you will.

"A. He just grabbed his jacket—had his jacket off—grabbed his jacket and run out the door.

"Q. Now, all of this time you were in that house, how far was Cynthia from you?

"A. She wasn't any further than this right here from me (indicating).

"Q. As close as I am to you now?

"A. Yes.

"Q. The whole time you were in that house?

"A. Well, after I was on the floor, you know, a little further away than that.

"Q. This far (indicating)?

"A. Yes.

"Q. Could she see everything that was going on?

"A. Yes, she sat right there." (Tr. 13)

We are of the opinion that although the court admonished the prosecuting attorney to make no further reference to any other crime, that evidence of the rape of the grandmother could have been properly admitted as part of the res gestae. Kupiec v. State, Okl.Cr., 493 P.2d 444, wherein the defendant was convicted of armed robbery and rape, which causes were consolidated on appeal, we stated:

"The first proposition asserts that the trial court erred in allowing evidence of the rape in the armed robbery case, and the armed robbery evidence in the rape case. We are of the opinion that the evidence of the other crime in both cases was properly admitted, and that the same was part of the res gestae. We further observe that the same would be admissible under the exception to the general rule that when a defendant is put on

trial for one offense, he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone, and the admission of evidence of other crimes, either prior or subsequent to the offense for which he is on trial, is inadmissible. In Moulton v. State, Okl. Cr., 476 P.2d 366, we recently stated:

'However, evidence of separate and similar offenses is admissible when it is material and proper to show (1) motive, (2) intent, (3) absence of mistake or accident, (4) identity of person charged with the commission of the crime for which an accused is put on trial, and (5) common scheme or plan embracing the two or more crimes so related to each other that proof of one tends to establish the other.' "

We therefore conclude that there was no improper evidence relating to another crime received by the jury. The trial court instead did not permit the state to introduce evidence that a rape of the grandmother did in fact occur.

■ We, therefore, must consider the question of whether the three hundred year verdict is excessive. In the recent case of Callins v. State, Okl.Cr., 500 P.2d 1333, Judge Simms stated:

" * * * The subject of excessive sentence was thoroughly discussed in *Fields*,[1] supra, wherein we pointed out that sentences beyond the normal span of an appellant's life expectancy were not so excessive as to shock the sense of mankind. Recognizing, as well, that the sentence imposed by the jury in the instant case is, for all practical purposes, a life sentence, and in view of the Pardon and Parole Board's policy, is the same as set forth in their Rules filed with the Secretary of State, we find the jury's verdict was proper and should stand."

In the instant case, we are of the opinion that the verdict of the jury should likewise stand.

The judgment and sentence is accordingly affirmed.

SIMMS, J., concurs.

BRETT, J., dissents.

BRETT, Judge (dissents).

This is another example of the prosecution's multiple trials at the taxpayer's expense. For that reason I added the special concurrence on defendant's conviction for first-degree rape, which is reported in 493 P.2d 1139. The several offenses committed by defendant arose out of a single transaction, which should have been prosecuted under one information, with the several offenses being listed under separate counts. It is for that reason I am compelled to dissent to this decision.

The offenses committed by this defendant were of a heinous nature for which the defendant should receive punishment, but that punishment should be meted out in accordance with the proper administration of the law. I believe the law should not be bent and twisted to conform to the desires of the prosecution, notwithstanding the contention that the offenses are separate and distinct offenses. The statutes provide the means to accomplish the prosecution of these separate offenses, and this Court should require that they be followed. Until the statutes are followed, the costs for the administration of justice will continue to rise. Also, I must dissent herein because this Court held in Householder v. Ramey, Okl.Cr., 485 P.2d 247 (1971): "Where defendant was convicted of kidnapping for purpose of extorting thing of value, namely rape of the victim, he could not be tried separately for the rape, which was incident included within the crime for which he was convicted."

With reference to the 300 year sentence, I believe it is patently excessive, as set out in my special concurrence in Callins v. State, 500 P.2d 1333 (1972).

Therefore, I am compelled to respectfully dissent to this decision, as I view and interpret the law.

1. Fields v. State, Okl.Cr., 501 P.2d 1390.