**Eugene Paul KISER, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–75–401.**

Court of Criminal Appeals of Oklahoma.

Oct. 3, 1975.

Don Anderson, Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., for appellee.

## OPINION

BLISS, Judge:

The appellant Eugene Paul Kiser, hereinafter referred to as defendant, was by separate information filed in the District Court of Oklahoma County, Cases No. CRF–73–3734 and No. CRF–73–3735, charged with Rape in the First Degree and

Anal Sodomy. Both cases were consolidated for jury trial and the defendant was convicted on both charges. Punishment was assessed at a term of ninety-nine (99) years for rape and ten (10) years for sodomy, each under the direction and control of the Department of Corrections of the State of Oklahoma. From judgments and sentences in conformance with the verdicts the defendant has perfected his timely appeal.

Briefly stated the evidence presented at trial is as follows: Sydnye L. Hopkins testified that on December 26, 1973, she was ten years old. She normally lived with her mother in Crescent but on that date she was visiting with her father, who lived in Oklahoma City. She had been working at some art hobby work and on the evening of the 26th he let her go to a convenience store about a half block away to get some brush cleaner. On her way back, a man, whom she identified in court as the defendant, came up to her, asked her name and age and stated he knew her father. He then took her by the hand and said he had a razor and would kill her if she did not do as he told her. He then took her to a nearby wooded area, accomplished sexual penetration of her labia and anus. He then told her she could go, but that he would kill her if she told her father. On returning home she told her father "a man had got me" and took him to the wooded area. There she saw the defendant hiding behind a tree and her father pursued him. She returned to her father's house and called police. Later she picked defendant out of a lineup as the assailant.

George Hopkins testified that he was Sydnye's father, divorced from her mother, and that Sydnye came to visit him Christmas Day of 1973. The next day they went to a hobby shop where he bought her some paints. She later needed some brush cleaner and about 8:30 p. m. he let her go to the convenience store about a half block away. After she was gone over ten minutes he became apprehensive and went out to look for her, taking a pistol. Searching around behind his apartment he encountered her and upon inquiry she stated "A man got me". She led him to a wooded area, saying the man had removed her panties. She exclaimed "There he is", and Hopkins saw someone run from behind a tree and pursued him. He finally caught up, struck the man with his pistol knocking him down, and threatened to kill him if he resisted. The man, whom he identified in court as the defendant, repeatedly said "Please don't kill me, I'm sorry I did it".

Dr. Bruce Darrow testified that on the evening of December 26, 1973, he was on duty at the University Hospital emergency room and examined Sydnye, obtaining a history from her that earlier that evening she had been penetrated sexually in the vagina and anus. Examination disclosed fresh bruises on her inner thighs, swelling of the external genitalia and, although the hymen was intact, there was a small fresh tear of the inner labia just inside the entrance to the vagina. There was redness and swelling in the rectal area and internally he noted two fresh abrasions. Specimens taken from the rectum disclosed dead sperm. In his opinion there was penetration of the vagina, although incomplete.

Officer J. L. Adams of the Oklahoma City Police Department testified that on December 26, 1973, he was sent to an apartment complex about 9:00 p. m. He and an Officer Bell came upon defendant lying face down with George Hopkins sitting on top of him. Search of defendant disclosed a straight-edge razor. Adams gave defendant the Miranda warning and on the way to the station defendant repeatedly said he was sorry. Officer Bell's testimony did not differ substantially from that of Adams as to the events at the apartment complex.

For the defendant, Dr. R. D. Garcia testified that he was Chief Forensic Psychiatrist at Eastern State Hospital at Vinita. He examined defendant first on February 8, 1974, and on March 14 arrived at a diagnosis that defendant was insane according to the laws of the State of Oklahoma.

Treatment of the condition was undertaken. Defendant had twice been committed for treatment at Vinita before, the earliest in 1967. He had also been twice committed to a mental hospital in California. The diagnosis each time was schizophrenia, chronic, indifferentiated. Depending on the severity of the affliction, a schizophrenic would not be able to distinguish right from wrong, especially so when he had not been taking medication. Dr. Garcia further stated that the defendant was certified as mentally competent to stand trial and that he had no opinion as to whether the defendant was sane or insane at the time of the alleged crime.

The defendant did not testify in his own behalf.

The defendant in his brief urges that the verdicts were not supported by the evidence and that the punishment assessed by the jury was excessive.

An examination of the record reflects that the jury was justified in finding that the defendant committed the crimes as charged. No substantial right of the defendant has been violated and he received a fair and impartial trial. This Court has held on many occasions that where there is competent evidence in the record from which a jury would reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict even though there is a sharp conflict in the evidence and different inferences might be drawn therefrom. *Williams v. State*, Okl.Cr., 373 P.2d 91.

Concerning the punishment assessed by the jury, it cannot be said that same was excessive. The issue of insanity was properly submitted to the jury and the sentences assessed were within the limits prescribed by law. This Court cannot conscientiously say that under all the facts and circumstances the sentences are so excessive as to shock the conscience of the Court. *Clouse v. State*, Okl.Cr., 389 P.2d 1002; *Fields v. State*, Okl.Cr., 501 P.2d

1309, and *Callins v. State*, Okl.Cr., 500 P. 2d 1333.

It is, therefore, the opinion of this Court that the judgments and sentences appealed from should be, and the same are hereby, affirmed.

BUSSEY, J., concurs.

BRETT, P. J., concurs in results.