Jimmy Lee **THIGPEN**, and Jimmy Lee Henderson, Appellants,

v.

The **STATE** of Oklahoma, Appellee.

No. F-77-208.

Court of Criminal Appeals of Oklahoma.

Oct. 14, 1977.

Rehearing Denied Nov. 15, 1977.

John T. Elliott, Public Defender, Michael Jackson, Asst. Public Defender, Oklahoma County, for appellants.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellants, Jimmy Lee Thigpen and Jimmy Lee Henderson, hereinafter referred to as defendants, were charged in the District Court, Oklahoma County, Case No. CRF–76–2173, with the offense of Burglary in the Second Degree, After Former Convic-

tion of a Felony, in violation of 21 O.S.1971, § 1435, and 21 O.S.1971, § 51. The jury returned a verdict of guilty, and punishment was assessed at sixty-seven (67) years' imprisonment against both defendants. Judgment and sentence was imposed on defendant Thigpen on September 29, 1976. Judgment and sentence was imposed on defendant Henderson on October 28, 1976, at which time seventeen (17) years of said sixty-seven (67) year sentence were suspended. From said judgments and sentences a timely appeal has been perfected to this Court.

The first witness for the prosecution was Leonard Ingram Saunders, who is business manager for the Opportunity Industrialization Center of Oklahoma County, Incorporated, and was so employed on June 1, 1976. He testified that he left the premises on Friday preceding the Memorial Day weekend, and that when he left the building was secured, and to his knowledge the bathroom window, which was later found broken, was intact. He also stated that he knew Jimmy Thigpen as a former trainee of the center.

The next witness was Douglas W. Choate, who stated that he was a night service and security man for Protection Alarm Company on the night of May 31 and June 1, 1976, and that he responded to a silent alarm at the O.I.C. Building, which is located at 400 North Walnut in Oklahoma County. Mr. Choate further testified that the alarm was sounded at 11:45 p. m. and that he arrived at the building around 11:47 p. m., shortly before the police officers arrived. Mr. Choate entered the premises with the police officers, and in the following search of the building the two defendants and another subject were discovered.

The next witness was Bobby G. Graham, Oklahoma City Police Officer, who testified that he and Officer Robertson responded to a silent alarm on the night of May 31, at the O.I.C. Building located at 4th and Walnut Streets. The security guard for Protection Alarm Company was already there, and the three of them proceeded to search the premises. They discovered a bathroom window broken on the main floor of the building, and later discovered the two defendants and one other subject hiding in the basement. Officer Graham stated that he advised the subjects of their *Miranda* rights. Officer Graham testified on cross-examination that he did not see the bathroom window get broken, and that he did not know who had done it.

The next witness, Gordon Robertson of the Oklahoma City Police Department, essentially corroborated the testimony of his partner, Officer Graham. Additionally, he stated that when Officer Graham was arresting the two defendants and the other subject, Teddy Vanodoe, he observed some glass embedded in the soles of the shoes of Vanodoe.

R. C. Scobey, Detective for the Oklahoma City Police Department, testified that he also gave the two defendants their *Miranda* warnings, and, without objection, he testified that defendant Henderson admitted that he and defendant Thigpen were in the building, and that the reason they had not taken anything out of the building was because of the quick response by the security guard and the police. On cross-examination, Scobey admitted that he was not at the O.I.C. Building the night the defendants were arrested, and that he did not know how the defendants got into the building.

The State then rested.

Defendant Thigpen testified that he was enrolled at O.I.C. when he was arrested on the burglary charge. He further stated that on the night he was arrested he was jogging by the building and observed an acquaintance, Teddy Vanodoe, inside. Defendant Thigpen went to the door of the building to try to convince Vanodoe that there was nothing to steal when the police arrived and, because he was frightened, he followed Vanodoe into the basement and hid. On cross-examination, defendant Thigpen said he initially lied to the officers about his name because he was afraid.

Defendant Henderson, like defendant Thigpen, testified that he too was enrolled at O.I.C. when arrested for the burglary on the night in question. Defendant Henderson stated that he was walking through a

field across the street from the O.I.C. Building when he observed someone enter the back door of the building. Out of curiosity he entered the building and, upon hearing a noise, he went down to the basement where he saw Vanodoe and defendant Thigpen. The police later apprehended them there. Defendant Henderson said that he too lied to the police about his name because he was afraid.

■ The first assignment of error is that the District Attorney should not have been allowed to amend the information when the State rested its case. The information originally charged the defendants with burglarizing the Oklahoma Industrialization Center, Inc., located at 400 North Walnut, Oklahoma City. However, the testimony at trial showed the premises located at 400 North Walnut to be the Opportunity Industrialization Center, Inc. Over the objection of the defendants the court allowed the information to be amended to correctly state the name of the building. Title 22 O.S.1971, § 304, states:

"An information may be amended in matter of substance or form at any time before the defendant pleads, without leave, and may be amended after plea on order of the court where the same can be done without material prejudice to the right of the defendant; no amendment shall cause any delay of the trial, unless for good cause shown by affidavit."

The issue here is whether permitting the District Attorney to amend the information created material prejudice to the rights of the defendants. In *Neal v. State,* Okl.Cr., 529 P.2d 526, 530 (1974), this Court approved the amendment of the information as follows:

"[The amendments] provide additional description of the property to wit: the serial numbers, and as a consequence, in light of the defense presented by defendants, can in no way be deemed to have altered the Information to such an extent that the defendant would be prejudiced in the manner in which he presented his defense. . . . ."

While the instant case involved the correction of the name of the building burglarized instead of additional description of the property, the rule still applies because there was no prejudice to the defendants. The information provided the correct address, and the mistake in the name of the building was trivial. There could have been no mistake as to what building was referred to throughout the trial. For this reason we find this assignment of error to be without merit.

■ The second assignment of error is that the instructions to the jury were fundamentally deficient in that the jury was not provided an instruction on the issue of unlawful entry. Although the defendants at bar did offer testimony to explain their presence in the building, there was no requested instruction submitted to the court, nor were there any objections to the instructions given. We therefore find no merit to this assignment of error.

■ The defendants' third and fourth assignments of error are concerned with the second stage of the proceedings wherein the defendants were charged under 21 O.S. Supp.1976, § 51(A)[1]. The defendant Thig-

1. Title 21 O.S.Supp.1976, § 51(A), reads as follows:

"Every person who, having been convicted of any offense punishable by imprisonment in the penitentiary, commits any crime after such conviction is punishable therefor as follows: "1. If the offense of which such person is subsequently convicted is such that upon a first conviction an offender would be punishable by imprisonment in the penitentiary for any term exceeding five (5) years, such person is punishable by imprisonment in the penitentiary for a term of not less than ten (10) years.

"2. If such subsequent offense is such that upon a first conviction the offender would be punishable by imprisonment in the penitentiary for five (5) years, or any less term, then the person convicted of such subsequent offense is punishable by imprisonment in the penitentiary for a term not exceeding ten (10) years. "3. If such subsequent conviction is for petit larceny, or for any attempt to commit an offense which, if committed, would be punishable by imprisonment in the penitentiary, then the person convicted of such subsequent offense is punishable by imprisonment in the penitentiary for a term not exceeding five (5) years."

pen alleges that the trial court should have instructed under 21 O.S.Supp.1976, § 51(B)[2], and that under that section his sentence is excessive, as this provision would limit his sentence to twenty-seven (27) years' imprisonment. These assignments of error clearly demonstrate the ambiguity of 21 O.S. Supp.1976, § 51(B), in that if followed to its logical conclusion a defendant with a single prior conviction could receive a greater penalty than a felon with two or more prior convictions. To apply the statute in the instant case would be to allow the sentence of defendant Henderson, with one prior conviction, to stand at sixty-seven (67) years, and to limit the sentence of defendant Thigpen, with two prior convictions, to twenty-seven (27) years.

We are of the opinion that it was the legislative intent in enacting the provisions of 21 O.S.Supp.1976, § 51(A) and § 51(B), to authorize progressively greater punishments for habitual criminals; Section 51(B), however, is so vague and illusory when construed with Section 51(A) that it cannot be construed in such a manner as to implement the legislative intent, and because of its vagueness and demonstrated defects we are of the opinion that 21 O.S.Supp.1976, § 51(B), is unconstitutional[3] and that the trial court would have erred had an instruction been given thereunder. However, such an error would not have required reversal. See, 20 O.S.1971, § 3001.

Since the provisions of 21 O.S.Supp. 1976, § 51, contain a severability clause, our holding today in no way impairs the validity of 21 O.S.Supp.1976, § 51(A).

For the foregoing reasons and in the interest of justice, this Court finds that the sentences should be, and are hereby, MODIFIED from sixty-seven (67) years' imprisonment each, with seventeen (17) years of defendant Henderson's punishment being suspended, to fifty (50) years' imprisonment each, and as so modified, the judgments and sentences appealed from are AFFIRMED.

BRETT, J., specially concurs.

CORNISH, J., concurs.

BRETT, Judge, specially concurs:

I concur in this decision that the statute is unconstitutional for vagueness, but I hasten to add that I objected to the 1500 year sentence imposed in *Callins v. State,* Okl. Cr., 500 P.2d 1333 (1972), and the 1000 year sentence approved in *Fields v. State,* Okl. Cr., 501 P.2d 1390 (1972), both of which are mentioned in the attached appendix to this decision.

## APPENDIX

### IN THE DISTRICT COURT OF OKLAHOMA COUNTY

### STATE OF OKLAHOMA

### ADVISORY OPINION TO THE JUDGES

The Thirty-Fifth Oklahoma Legislature, 1976, amended the statute which is commonly referred to as the Habitual Criminal Statute. The statute, as amended, is now codified as 21 O.S. 1976 Supp., § 51, and became effective May 10, 1976. Said statute, with the amendatory portion underlined, provides as follows:

---

2. Title 21 O.S.Supp.1976, § 51(B) reads:
    "Every person who, having been twice convicted of felony offenses, commits a third or thereafter, felony offenses within ten (10) years of the date following the completion of the execution of the sentence, shall be punished by imprisonment in the State Penitentiary for a term of twenty (20) years plus the longest imprisonment for which the said third or subsequent conviction was punishable, had it been a first offense; provided, that felony offenses relied upon shall not have arisen out of the same transaction or occurrence or series of events closely related in time or location; provided, further, nothing in this section shall abrogate

or affect the punishment by death in all crimes now or hereafter made punishable by death."

3. Although we have not set forth in detail the many absurdities which could result from an application of Section 51(B) nor the authorities upon which we have relied in determining its constitutionality, we were assisted in arriving at our decision by the very excellent Advisory Opinion to the Judges, prepared for his colleagues by the Honorable Charles L. Owens, District Judge of the Seventh Judicial District, which we set forth in the appendix to this opinion.

"A. Every person who, having been convicted of any offense punishable by imprisonment in the penitentiary, commits any crime after such conviction is punishable therefor as follows:

1. If the offense of which such person is subsequently convicted is such that upon a first conviction an offender would be punishable by imprisonment in the penitentiary for any term exceeding five (5) years, such person is punishable by imprisonment in the penitentiary for a term not less than ten (10) years.

2. If such subsequent offense is such that upon a first conviction the offender would be punishable by imprisonment in the penitentiary for five (5) years, or any less term, then the person convicted of such subsequent offense is punishable by imprisonment in the penitentiary for a term not exceeding ten (10) years.

3. If such subsequent conviction is for petit larceny, or for any attempt to commit an offense which, if committed, would be punishable by imprisonment in the penitentiary, then the person convicted of such subsequent offense is punishable by imprisonment in the penitentiary for a term not exceeding five (5) years.

B. Every person who, having been twice convicted of felony offenses, commits a third, or thereafter, felony offenses within ten (10) years of the date following the completion of the execution of the sentence, shall be punished by imprisonment in the State Penitentiary for a term of twenty (20) years plus the longest imprisonment for which the said third or subsequent conviction was punishable, had it been a first offense; provided, that felony offenses relied upon shall not have arisen out of the same transaction or occurrence or series of events closely related in time or location; provided, further, that nothing in this section shall abrogate or affect the punishment by death in all crimes now or hereafter made punishable by death."

The amended Section 51 has caused considerable confusion in this Seventh Judicial District in its application in specific instances. An example is in order here so that the problem may be quickly brought into focus.

Consider a situation in which a defendant is charged with the crime of Burglary in the Second Degree, After Former Conviction of Two Felony Offenses. In this example the defendant is found guilty by a jury of the present offense and does not stipulate in the second stage of the trial to the previous convictions. The State, consequently, has the burden of proving same. The Court's instructions in the second stage of the trial would necessarily include the range of punishments for first offense Burglary in the Second Degree, Burglary in the Second Degree, After Former Conviction of One Felony and Burglary in the Second Degree, After Former Conviction of Two Felonies. The following would be the instructed punishments:

| Offense | Punishment |
|---|---|
| Burglary in the Second Degree | Imprisonment not exceeding seven (7) years and not less than two (2) years |
| Burglary in the Second Degree, After Former Conviction of One Felony | Imprisonment for a term not less than ten (10) years |
| Burglary in the Second Degree, After Former Conviction of Two Felonies | Imprisonment for twenty (20) years plus seven (7) years |

We have, then, a situation in which the jury, should it find from the evidence that the defendant had two previous felony convictions, must assess the defendant's punishment at 27 years. But what if the jury should find that the State has established

only one previous conviction, or what if the jury should find that the instant offense was not committed within 10 years of the completion of the execution of one of the previous felony convictions? In either of such events there would remain only one previous felony conviction and the jury would, under the first subsection of 21 O.S. 1976 Supp., § 51, supra, fix the defendant's punishment at imprisonment for a term not less than 10 years.

A jury would likely view the Court's instructions in this regard as being rather ludicrous. No doubt a jury would deem such instruction even more ludicrous where there were several previous felony convictions. In other words, a jury would be told by the Court, in effect, that if they found from the evidence that the defendant had two, or even ten, previous felony convictions they could only assess punishment at 27 years imprisonment, but if they found that he had only one previous felony conviction, then they could assess punishment at any number of years above 10 years.

The possibilities under such situation are obvious. This county has witnessed extreme punishment assessments by juries under the said Section 51(A)(1). In *Callins v. State*, Okl.Cr., 500 P.2d 1333 (1972), the Court of Criminal Appeals affirmed a sentence of 1500 years which a jury fixed for the crime of Rape in the First Degree, After Former Conviction of a Felony. The appellate court specifically rejected attacks on such sentence based upon cruel and unusual punishment, equal protection of the law, encroachment upon the executive branch and excessiveness. Again in *Fields & Phillips v. State*, Okl.Cr., 501 P.2d 1390 (1972), said court affirmed a sentence of 1000 years for the same offense. Very recently in this county a jury returned a verdict fixing a defendant's sentence at 999 years upon conviction of the crime of Rob-

bery With Firearms, After Former Conviction of a Felony. The trial court overruled a motion for new trial in that case.

With specific regard to the offense used in the example above, Burglary in the Second Degree, After Former Conviction of a Felony, it should be noted that the Court of Criminal Appeals in the case of *Wilkerson v. State*, Okl.Cr., 489 P.2d 1098 (1973), affirmed a sentence of 99 years, although modifying same to 50 years. In *Watkins v. State*, Okl.Cr., 511 P.2d 589 (1973), that court affirmed a sentence of 50 years, but modified it to 35 years, and in *Johnson v. State*, Okl.Cr., 453 P.2d 390 (1969), that court affirmed a sentence of 40 years imprisonment.

Again, such possibilities exist only where a defendant is so unfortunate as to be charged with or convicted of the commission of Burglary in the Second Degree, after former conviction of one felony offense. Should he have previously been convicted of two, five or eight felony offenses, and then commits the crime of Burglary in the Second Degree, then he must be satisfied with a sentence of 27 years imprisonment.

Although the illustration set forth at the outset of this opinion involved a prosecution for the crime of burglary in the second degree, the same possible absurd consequences exist whenever the offense being tried is one in which the possible penalty exceeds five years imprisonment, thereby falling within 21 O.S.1976 Supp., § 51(A)(1), the defendant is charged after former conviction of two or more felonies, and the court's instructions give the jury the option of finding the state's evidence has beyond a reasonable doubt established only one prior felony conviction. Some other such offenses with which we regularly deal and which fit this category are the following:

| Offense | Punishment |
| --- | --- |
| Burglary, 1st Degree | Not less than 7 nor more than 20 years |
| Arson, 1st Degree | Not exceeding 20 years |
| Arson, 2nd Degree | Not exceeding 15 years |
| Uttering a Forged Instrument | Not exceeding 7 years |

| Offense | Punishment |
|---|---|
| Indecent Exposure | Not less than 30 days nor more than 10 years |
| Shooting With Intent to Kill | Not exceeding 20 years |
| Bogus Check | Not less than 1 nor more than 10 years |
| Larceny of an Automobile | Not less than 3 nor more than 20 years |

Further illustrative of some of the possible absurd ramifications of the questioned statute are those crimes for which the legislature has provided open-ended punishment. Some of these are Robbery with Firearms, the punishment for which is imprisonment for not less than 5 years, Manslaughter in the First Degree, punishment for which is imprisonment for not less than 4 years, and Rape in the First Degree, which carries punishment of imprisonment for not less than 5 years. Utilization of the amended Section 51 in prosecutions for any of these crimes, after former conviction of two or more felonies, would require the court to instruct the jury that should they find that the state's evidence has established two or more prior felony convictions, then they must assess punishment at 20 years imprisonment plus life imprisonment. Merely to state such circumstance is to suggest its absurdity.

The intent of the Oklahoma Legislature in originally enacting the Habitual Criminal Statute is readily apparent. Should there by any doubt, however, our Court of Criminal Appeals has long since removed it by stating repeatedly that the purpose of the statute is to describe circumstances wherein one found guilty of a specific crime may be more severely penalized because of his previous felony conviction or convictions. *Ex Parte Ward*, 97 Okl.Cr. 60, 257 P.2d 1099 (1953), certiorari denied 346 U.S. 879, 74 S.Ct. 133, 98 L.Ed. 386; *Salisbury v. State*, 80 Okl.Cr. 13, 156 P.2d 149. Even more specifically, said court has said that the intent of the legislature in enacting such legislation was to enhance punishment and not to decrease it. *Dillon v. State*, Okl.Cr., 508 P.2d 652; *Fulton v. State*, Okl.Cr., 491 P.2d 789.

Likewise, the intent of the legislature in amending the statute is obvious, although there has as yet been no pronouncement by our appellate court in this regard. The legislature obviously felt that one who has committed two or more felony offenses and then commits another, thereby becoming a third or subsequent offender, should be punished more severely than one who had only one previous felony conviction. But what has our legislature done in this present enactment, albeit probably an inadvertent result on its part? It has created a situation in which a second offender can, and likely very frequently will, be punished by a jury more severely than a third or subsequent offender. By so doing, the legislature has, in this writer's opinion, denied a portion of a given classification the equal protection of the laws.

As we know, that protection just alluded to is embraced in the Fourteenth Amendment of the Constitution of the United States, which provides:

"* * * No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Just what is this equal protection guaranty which is established by the Fourteenth Amendment? A concise and workable definition is provided by this language from 16 Am.Jur.2d, § 488:

"The guiding principle most often stated by the courts is that the constitutional guaranty of equal protection of the laws requires that all persons shall be treated alike under like circumstances and condi-

tions, both in the privileges conferred and in the liabilities imposed. In some cases the principle is stated a little more fully so as to include also within its purview of equality exemptions from liabilities. The equal protection guaranty is intended to secure equality of protection not only for all, but against all similarly situated. * *

Equal protection of the laws is something more than an abstract right; it is a command which the states must respect, the benefits of which every person may demand. Similarly, the laws to which the Fourteenth Amendment's guaranty of equal protection has reference do not relate to abstract units but are expressions of policy arising out of specific difficulties, addressed to the attainment of specific ends by the use of specific remedies.

The Supreme Court has pointed out that the guaranty of equal protection of the laws is not one of equality of operation or application of state legislation upon all citizens of a state. Hence, laws need not affect every man, woman and child exactly alike in order to avoid the constitutional prohibition against inequality. Equality of operation of statutes does not mean indiscriminate operation on persons merely as such, but on persons according to their circumstances. Equal protection in its guaranty of like treatment to all similarly situated permits classification which is reasonable and not arbitrary and which is based upon substantial differences having a reasonable relation to the objects or persons dealt with and to the public purpose sought to be achieved by the legislation involved."

Long ago, our Court of Criminal Appeals said much the same thing in the case of *State v. Johnsey,* 46 Okl.Cr. 233, 287 P. 729 (1930). In that case the Court was concerned with a statute which provided punishment for escape from the state prison at imprisonment for a term not exceeding double the term for which the prisoner was sentenced. In holding the statute unconstitutional as violative of the equal protection clause of the Fourteenth Amendment, the Court said this in the first paragraph of the syllabus of the opinion:

"Every person is entitled to equal protection of the law and 'equal protection of the law' means that equal protection and security shall be given to all under like circumstances in his life, liberty, and his property, and in the pursuit of happiness, and in the exemption from any greater burdens and charges than are equally imposed upon all others under like circumstances."

In the case of *Jack's Supper Club, LTD v. City of Norman,* Okl., 361 P.2d 291, the Supreme Court of Oklahoma upheld the constitutionality of an ordinance dealing with the licensing and regulation of private clubs which permitted consumption of intoxicating liquor on the premises. The court rejected an equal protection attack on said ordinance but, nonetheless, held significantly in the second paragraph of the syllabus as follows:

"The equal-protection clause of the 14th Amendment to the Constitution of the United States only requires that classifications made by a municipal legislative body be reasonable, not arbitrary, and rest upon some ground of distinction having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike."

CONCLUSION

The legislature could, without committing constitutional error, single out a classification of persons who would be affected by legislation. This was what it intended to do by passage of that amendatory language contained in 21 O.S.1976 Supp., § 51. The legislature could, further, within that classification relating to habitual offenders, make a distinction between the punishments for second felony offenders and that punishment for third or subsequent offenders. Such classification and sub-classification would have a reasonable relation to the obvious public purpose sought to be achieved by such legislation.

The finished product of the legislature did not do this, however. In its application

the amended statute fails to accomplish its object and purpose. It provides the possibility, and indeed the probability, of assessing greater punishment against one who commits a felony and is found to have previously been convicted of one other felony than it does against one who commits a felony and is found to have previously been convicted of two or more felonies.

Had the legislature enacted such legislation with the avowed purpose of making the punishment for second offenders more severe than that for third or subsequent offenders, the constitutional infirmity of such legislation would be patent. It would be unreasonable and arbitrary and would not rest upon some ground of distinction having a fair and substantial relation to the object of the legislation. It would seem that the same conclusion must be drawn in the instant situation in which the legislature, no doubt, did not intend this result.

Title 21 O.S.1976 Supp., § 51(B), is unconstitutional, in this writer's opinion, being violative of the equal protection clause of the Fourteenth Amendment of the Constitution of the United States. It should be so held. Your writer suggests, by the first District Judge of this Court who is called upon in a given prosecution to instruct under its provisions relating to defendants who are charged with former convictions of two or more felonies. By striking down the constitutionally defective portion of said statute we will still leave in effect that portion of the Habitual Criminal Statute as we knew it before the amendment.

Dated this 27th day of April, 1977.

Respectfully submitted,

(s) <u>Charles L. Owens</u>
Charles L. Owens
District Judge