**James ROBISON, Plaintiff in Error,**
**v.**
**The STATE of Oklahoma, Defend-**
**ant in Error.**
**No. A–13986.**

Court of Criminal Appeals of Oklahoma.
July 26, 1967.

Harold J. Singer, Enid, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Charles L. Owens, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

Briefly stated, the facts as they appear in the record, disclose that on the evening of the 28th day of February, 1950, Carl Goldsberry was found unconscious on the floor of his workshop located in the back of his appliance store in the 500 block of North Washington, Enid, Oklahoma, in a pool of blood and that he was removed to the hospital where he expired without regaining consciousness. The medical testimony establishes that he died as a result of traumatic injuries received from a beating. After intensive search of the premises, a washing machine agitator shaft with traces of blood and hair on it, was found on the premises where the homicide occurred. There was little money in the cash register and no trace of the customary daily receipts which Mr. Goldsberry usually removed from the cash register at the close of the business day. Numerous persons were interrogated, but it was not until the authorities questioned Orville Butts on the 5th day of April, 1950, that information implicating James Robison, hereinafter referred to as the defendant, in the commission of the homicide was obtained. Orville Butts and James Robison had robbed the bank in Okarche on the 4th day of April, 1950, and were charged in the United States District Court for this offense. For his participation in the Okarche robbery, the defendant was sentenced to serve a term of thirty years imprisonment in the Federal Penitentiary, later reduced to twenty-five years imprisonment, and he commenced serving this sentence in 1950 and was released on parole in 1960. Prior to his release and shortly after having questioned Orville Butts and the defendant in 1950, murder charges were filed against the defendant for the slaying of Carl Goldsberry. No action was taken on this charge until the 7th day of July, 1965, when the defendant, who had unsuccessfully attempted to get the charge dismissed in order to secure a Presidential pardon on the charge of robbery, was placed in custody of the Garfield County authorities and after being bound over on preliminary hearing, was tried by a jury on the 11th day of October, 1965. Said trial resulted in his conviction wherein he was found guilty of the crime of murder and sentenced to life imprisonment in the State Penitentiary at Mc-

Alester. On appeal defendant argues seven assignments of error. Since this case must be reversed and remanded for a new trial, we will consider only those assignments of error which may help to establish guidelines for the respective parties on the new trial.

Suffice it to say that the testimony of Mr. Butts and that of the defendant was in sharp conflict and the credibility of these key witnesses was, in the trial of this case, as it will be on a new trial, a determinative factor in the outcome of the case. It was with a recognition of this fact that the special prosecutor in his cross-examination of the defendant, delved in great detail into the many matters testified to by the defendant in direct examination. In this regard we observe that the trial court gave great latitude to counsel for defendant in admitting testimony detailing the life history of the defendant prior to the 28th day of February, 1950, and to his employment record, philosophy, and details surrounding his life up until the day of trial. Although the defendant testified only briefly concerning his military service and discharge during World War II, the special prosecutor cross-examined the defendant in great detail, without objection being interposed, about the various branches of military service in which the defendant served, his training, duty, stations and wartime experiences. As we have stated, much of this testimony was admitted without an objection being interposed, but as the cross-examination of the defendant and the questioning lengthened, the issues were narrowed to the official reasons for his discharge and separation from military service and the medical record relating thereto, and over his repeated objections, the defendant, who had earlier testified that medical reasons for his discharge from the Army Air Corps in 1942 came as a result of a head injury received by him in a parachute jump, admitted that there had been an additional diagnosis of epilepsy. Not satisfied with having secured this admission, the special prosecutor was allowed to read a portion of the defendant's medical record to the jury and into the record over defendant's objection. The portion of the medical record read to the jury appears in the case-made in the following language:

"SPECIAL PROSECUTOR: 'On admission to this hospital he was observed, by the medical officer, to have a grand mal seizure characterized by generalized convulsive movements of the body, frothing at the mouth, and followed by a deep sleep and a period of confusion.' "

After having successfully placed before the jury that portion of the medical record above referred to, the closing argument of the special prosecutor emphasized the discrepancy between the record and testimony earlier given by the defendant on cross-examination in an effort to destroy the defendant's credibility as a witness. There are several reasons why we are of the opinion that the trial court erred in admitting this portion of the defendant's medical record. The first of those being that the record related only to collateral matters and did not tend to prove or disprove any fact material to the crime of Murder. It is a well recognized principle of law that it is error to admit rebuttal evidence contradicting the testimony of a defendant on a collateral issue and whether such error requires a reversal must be determined on the basis of the entire record. We believe this rule is equally applicable where, during the course of the cross-examination, the contradictory evidence is offered to impeach the defendant on a collateral matter. From the frequent and repeated reference to this evidence in his closing argument, it is readily apparent that the special prosecutor considered this evidence as a vital part of the State's case. We cannot say that the admission of this evidence and the repeated references to it did not influence the jury's verdict. Under the entire record we are of the opinion that this error requires a reversal. There is yet another reason why the admission of this portion

of the medical record was improper, for it violates the provisions of Article II, § 20 of the Oklahoma Constitution which provides in part that a defendant has a right to be confronted by the witnesses appearing against him. The purpose of this constitutional guarantee is to insure to every person tried for the commission of a crime the right to cross-examine persons making statements which are admitted into evidence against the defendant. In the instant case defendant was not accorded the right to cross-examine the author of that portion of the medical record admitted into evidence against him and the denial of this right constituted error.

▉▉▉ Much of the defendant's brief is devoted to alleged prejudicial remarks made by the prosecution during the closing arguments and we will not consider them at length except to observe that if counsel wishes to preserve in the record alleged errors committed during the closing argument of the State, he should request that all of the arguments for the State and defendant be transcribed and when objectionable statement is made by the prosecution, it should be called to the attention of the court by timely objection, together with a request that the jury be instructed to disregard the improper statement and in the event that the objection is overruled, an exception should be taken to the ruling of the court, preserved and argued in the Motion for New Trial. When this is not done the matter cannot be presented for the first time in the Motion for New Trial and in the Petition-in-Error and briefs on appeal. In the event counsel for the defendant considers the remarks so fundamentally prejudicial that the court cannot, by instructions to the jury, correct such error, counsel for defendant should move for a mistrial and preserve this in his Motion for a New Trial.

The defendant's contention that the trial court committed error in failing to sustain his Demurrer to the Information for the reason that the word "premediated" instead of "premeditated" was used in the charging part of said Information, is a matter which can be corrected prior to the new trial.

The defendant's assignment of error that the trial court committed reversible error in admitting into evidence posed photographs of the late sheriff holding an agitator crank shaft of a washing machine which had been found at the scene of the homicide with freshly matted blood and hair on it, is argued under two propositions. First, defendant urges that the photograph was not properly identified, in that there was no testimony of the person who took it, the type camera used, and the developing process used. Secondly, the defendant urges that same was inadmissible in that it was a posed photograph, the shaft being held in the hands of the sheriff, Lelon Coyle.

▉▉▉ We are of the opinion that the Attorney General has fully and completely dealt with this assignment of error, in his brief, to-wit:

"In regard to the defendant's first contention, this Court has held repeatedly, in effect, that a photograph which is shown to be a faithful reproduction of what it purports to reproduce is admissible as an aid to the jury in applying the evidence, irrespective of whether it relates to person, things, or places. See Buntin v. State, Okl.Cr., 403 P.2d 237, and Pate v. State, Okl.Cr., 361 P.2d 1086.

Moreover, this Court has further repeatedly held that the question of the admission of a photograph is a preliminary one, and the admission or rejection of same is largely within the discretion of the trial court, unless as a matter of law error is committed in such admission to the prejudice of the defendant. See Benefield v. State, Okl.Cr., 355 P.2d 874; Born v. State, Okl.Cr., 397 P.2d 924, and Pate v. State, supra.

In Benefield, supra, it will be noted that there the prosecution was for forgery by the defendant of his name to a gasoline

invoice. The original invoice had been lost prior to trial and the state introduced a photostat of the duplicate of same, which was secured from the oil company. This was admitted in evidence by the trial court after testimony by the trial court after testimony by witnesses that the exhibit was an accurate reproduction of the original. In deciding the question of whether the trial court erred in admitting the photostat in evidence, this Court quoted from the case of Mow v. People, 31 Colo. 351, 72 P. 1069, as follows:

'In order to warrant the admission of a photograph in evidence, it is only necessary to show, if otherwise competent, that it is a correct likeness of the objects it purports to represent, and this may be shown by the one making it, or by any other competent witness.'

and the Court quoted and adopted the following language from the case of Berkovitz v. American River Gravel Co., 191 Cal. 195, 215 P. 675:

'Testimony that a photograph is a correct representation of the object sought to be shown is sufficient foundation for its admission; and this need not be given by the photographer, but may be given by any one having sufficient knowledge of the object to say that the photograph is a faithful representation thereof.'

We submit that this Court need only compare these requirements with the testimony of state's witnesses Dale Moxley, Fred Herford, Ray Van Boskirk, Taylor Rogers, and James Krischke, all of whom saw the depicted objects shortly after they were found and all of whom testified that State's Exhibit C was an accurate representation of same.

As for the question of admissibility of posed photographs, the law long followed by this Court is set out typically in the syllabus of the opinion in the case of Langley v. State, 90 Okl.Cr. 310, 213 P.2d 886, as follows:

'2. Posed photographs taken some time subsequent to the controversy with men in various assumed positions, and things in various assumed situations, intended only to illustrate hypothetical situations are incompetent and inadmissible as evidence.

3. Photographs purporting to depict the conditions at the point of crime may be admitted in evidence, if it is proven or admitted that the objects surrounding the scene of the crime are in the same condition as they were at the time of the facts complained of, but may not be admitted as a "stage setting" for the purpose of re-enacting the crime.'

We are advised by Langley and by the case of Roberts v. State, 82 Okl.Cr. 75, 166 P.2d 111, that the evil to be guarded against is 'stage setting' for the purpose of re-enacting the crime as the state theorizes it happened. But that is not our situation. State's Exhibit C merely depicts the object which the state alleges to be the murder weapon, which the jury could believe or not believe. We submit that the distinguishing factor and the factor which makes this exhibit admissible is that it was offered merely for the purpose of showing the *object itself,* rather than to show the *manner in which it was likely used.* There is here, therefore, no 'stage setting.'"

For the reasons above set forth, we are of the opinion that this assignment of error is wholly without merit.

The judgment and sentence appealed from is reversed and remanded for a new trial consistent with this opinion.

BRETT, J., and NIX, P. J., concur.