Patricia Kay CHERRY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–286.

Court of Criminal Appeals of Oklahoma.

Dec. 18, 1975.

Rehearing Denied Jan. 20, 1976.

Gordon L. Patten, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge:

Appellant, Patricia Kay Cherry, hereinafter referred to as defendant, was charged, tried before a jury and convicted in the District Court of Tulsa County, Case No. CRF–74–1825, for the crime of Burglary in the Second Degree. Punishment was assessed at a term of Two (2) years in the custody of the Department of Corrections of the State of Oklahoma. From a judgment and sentence in conformance with the verdict the defendant has perfected her timely appeal.

Briefly stated, the evidence adduced at trial is as follows: Mrs. Jessie Yelton testified that on the 29th day of July, 1974, she returned from work to her home in Tulsa to find the defendant sitting on the passenger's side of a car parked in her driveway. After asking the defendant what she was doing and receiving no response, Mrs. Yelton went to her front door and noticed that the doorknob was missing. By that time the defendant was out of the car and Mrs. Yelton grabbed her by the wrist and accused her of robbing the home. The defendant began to struggle, screamed some man's name and yelled "run". The defendant then broke away, got in the car and drove off at a high rate of speed. Mrs. Yelton further testified that she had noted the license number of the car although the tag had been bent. An inspection of the home revealed that the garage and patio doors were open, another doorknob was missing and the home ransacked. Mrs. Yelton further testified that after the defendant drove away she noticed a man coming from between some houses next to her home. He proceeded on foot in the same direction as the defendant. She did not see the man with the defendant or on her premises.

Tulsa Police Officer John Umholtz then testified that after receiving the license number he determined that the automobile was owned by the defendant's father. The State and the defense then stipulated that if Edward Otto Yelton, Mrs. Yelton's husband, were to testify he would testify that on the morning of the 29th day of July, 1974, he was the last person to leave the home and that he had personally secured all doors. It was further stipulated that he did not know the defendant or Edward Earl McConnell, and that he did not give them permission to enter the house. The State then rested.

The defendant then called Edward Earl McConnell who testified that he was presently incarcerated in the Oklahoma State Reformatory in Granite. On the

29th day of July, 1974, he was in Tulsa, saw the defendant and asked her to take him to his aunt's house. He then took the defendant's key and before getting in the driver's side of her car bent the license tag. He then drove the defendant to the Yelton residence and told her to wait while he went to see if his aunt was home. He went to the front door, couldn't get in, and then entered through the garage. He testified that he had intended to break into the home but that the defendant knew nothing about it. After he had been in the home a short while he heard a commotion outside and noticed the defendant talking to a woman. He then ran out the backdoor, went around the house and escaped. He further testified that he only knew the defendant vaguely and that she in no way helped him break in the home. On cross-examination the witness admitted five felony convictions. The prosecuting attorney, over objection of defense counsel, then questioned the witness concerning his plea of guilty to a charge of uttering a forged instrument at a Sipes Grocery in Tulsa on the 25th day of July, 1974. The witness denied having been driven to Sipes by the defendant and further denied asking her to hold certain stolen checks for him.

The defendant took the stand and testified on her own behalf stating that on the date in question she was leaving her mother's apartment when she saw McConnell who asked her for a ride to his aunt's home. He then drove them to a residence, parked in the driveway and stated that he "would just be a few minutes". McConnell then went to the front door, couldn't get in, and entered through the garage door. A woman then drove up. In response to the woman's question as to what she was doing in the driveway the defendant stated she was waiting for someone. The woman then went to her front door, got some mail and then turned back towards the car as the defendant got out. The woman then grabbed her wrist and accused defendant of robbing her home. The witness became frightened, broke away and drove off. She stated she could

not remember whether she yelled a warning to McConnell, but testified that she did not realize what was going on until the woman accused her of robbing the home. She further testified that she only knew McConnell vaguely and denied being a lookout.

On cross-examination the defendant, over objection of defense counsel, denied having anything to do with McConnell passing forged checks at the Sipes store. The defendant did admit having been convicted on a prior narcotics charge.

Paul Inbody, a professor of marriage and family analysis at Oral Roberts University, then testified that he had known the defendant for ten to twelve years while he was a pastor at a Baptist church near her home. He further stated that she regularly attended church services and that he had occasion to recommend her for two jobs because of his confidence in her ability. The defense then rested.

On rebuttal the State called Tulsa Police Officer Arlie Owens who testified that he was involved in a forgery investigation concerning Edward Earl McConnell and had occasion to talk with the defendant. She told Owens that McConnell had given her some personal checks of a Robert Schoenfeld to keep and that she had driven McConnell to the Sipes store on four different occasions to cash the checks. She further stated that McConnell had told her that he had stolen the checks and a television set in a burglary. The conversation took place on the 25th of July, 1974.

■ The defendant's first assignment of error contends that there was insufficient evidence to warrant the trial court submitting the case to the jury. We disagree. In *Logan v. State,* Okl.Cr., 493 P.2d 842, the Court held as follows:

"While much of the evidence is circumstantial, this Court has often held a criminal case may be proved circumstantially and reasonable inferences drawn therefrom have the same probative effect as direct testimony. Additionally, circumstantial evidence need not exclude every hypothesis or negate any possibili-

ty other than guilt. *Bailey v. U. S.,* 410 F.2d 1209 (10th Cir. 1969). And finally, it is the exclusive province of the jury to weigh the evidence and determine the facts. *Jones v. State,* Okl.Cr., 468 P.2d 805; and where there is competent evidence from which the jury might reasonably conclude the defendant is guilty, the case will not be reversed on appeal on a contention that the evidence is not sufficient. *Brewer v. State,* Okl.Cr., 452 P. 2d 597." (Citation Omitted)

In the instant case the evidence reflects that the defendant was at the scene of the crime in a place where a lookout would normally be found. The evidence further indicates that upon the accusation of Mrs. Yelton the defendant yelled a warning and left the scene at a high rate of speed. Although the evidence is conflicting, it is our opinion that there was sufficient competent circumstantial evidence from which the jury, in its sole discretion, could determine that the defendant had the requisite knowledge and intent to be an accomplice in the commission of the crime charged. The defendant's first proposition in error is without merit.

The defendant's last assignment of error argues that the trial court committed reversible error in allowing testimony, over defense counsel's objections, concerning the defendant's alleged involvement with McConnell in uttering forged checks at the Sipes store.

The record indicates that both the defendant and McConnell as defense witnesses, testified on direct examination that they only knew each other vaguely. As it was relevant in the instant case to show the prior relationship between the defendant and McConnell and since both stated they were only "vague" acquaintances, it is our opinion that the State was properly allowed to cross-examine each concerning the Sipes incidents. It was also proper to allow the rebuttal testimony of Officer Owens.

When a defendant takes the witness stand he is considered a witness for all purposes and is subject to proper cross-examination upon all matters material to the issues involved. If he opens a certain subject for investigation on direct examination he cannot complain if questions are asked on cross-examination the answers to which would tend to modify his answers given in chief. *Creek v. State,* 16 Okl.Cr. 492, 184 P. 917, and *Rapp v. State,* Okl.Cr., 418 P.2d 357.

The rebuttal testimony of Officer Owens was properly admitted to contradict the testimony of the defendant and her witness McConnell. In *Hicks v. State,* Okl.Cr., 503 P.2d 243, we held that the admission of rebuttal evidence is largely a matter addressed to the sound discretion of the trial court and its ruling will not be reversed unless there is a showing of a manifest abuse of discretion. The defendant's last proposition is without merit.

After an examination of the record as a whole, it is our opinion that the defendant received a fair and impartial trial, that no substantial right was prejudiced and that the judgment and sentence appealed from should be and the same is hereby *affirmed.*

BUSSEY, J., concurs.

BRETT, P. J., concurs in results.