Robert Randall ZIEGLER, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–78–143.

Court of Criminal Appeals of Oklahoma.

April 15, 1980.

As Corrected April 23, 1980.

252

Frank H. McCarthy, Asst. Public Defender, Tulsa County, for appellant.

Robert Randall Ziegler, pro se.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., Carol Elaine Alexander, Legal Intern, for appellee.

## OPINION

BRETT, Judge:

Robert Randall Ziegler comes before this Court to appeal his six convictions in the District Court of Tulsa County, Case Nos. CRF-78-686, 687, 688, 689, 690 and 691. His convictions resulted from two charges of Rape in the First Degree, 21 O.S.1971, § 1114; Two charges of Sodomy, 21 O.S. 1971, § 886; Burglary in the First Degree, 21 O.S.1971, § 1431; and Unauthorized Use of a Motor Vehicle, 47 O.S.1971, § 4–102.[1] The jury found the defendant guilty of all charges After Former Conviction of a Felony. Punishment was set at life imprisonment plus twenty (20) years on each of the Rape charges, thirty (30) years on each of the Sodomy charges, forty (40) years for the Burglary, and twenty-five (25) years on the Unauthorized Use of a Motor Vehicle. The sentences are to run consecutively. Attorney Frank H. McCarthy has filed a brief alleging five errors in the trial, and the defendant has filed a pro se brief consisting of eleven assignments of error. This opinion will address only those allegations that merit discussion and deal briefly with the remainder.

At about 11:00 p. m. Saturday, March 12, 1977, Ms. J. S. locked all the doors and windows of her Tulsa apartment and then she and Ms. E. H. each retired. Ms. E. H., whose thirteenth birthday was the following day and who will hereinafter be referred to as the juvenile, was a resident of a children's home, and Ms. J. S. had developed a "sister" relationship with her.

At about 1:00 a. m. Sunday, March 13, Ms. J. S. screamed upon awakening to find a man standing at the foot of her bed. The intruder told her to "shut up or I'll kill you," and then forced her to yield to a sexual assault which lasted two hours. The victim was penetrated vaginally, orally, and anally, and at one point her assailant or-

1. There is a choice for the prosecutor to make in this type of situation. Before the defendant's trial, this Court published an opinion which included an interpretation of a 1968 statute securing to both the defendant and the State a more efficient disposition of this mat-
ter. *Dodson v. State*, Okl.Cr., 562 P.2d 916 (1977), in a special concurrence interpreting 22 O.S.1971, § 436. Section 436 clearly authorizes the State to charge a defendant with one or more offenses in counts, in a single indictment or information.

dered her to suck his neck, which she did, leaving a red mark. During this time, Ms. J. S. provided her assailant with a bottle of baby oil. From this bottle, a single identifiable fingerprint was entered into evidence at trial. Ms. J. S. testified that the double thickness light weight bedroom curtains remained drawn throughout the ordeal, but that the light from two exterior gas lamps, each of which had two burners, partially illuminated the room from their location of 20 to 25 feet beyond the bedroom window. She further testified that the light in her bedroom was sufficient for her to identify the defendant, who "was within six inches of [her] face for almost two hours."

After approximately two hours, the assailant bound and gagged Ms. J. S. and placed her on the floor next to her bed. He then awakened the juvenile. When the man accompanied the juvenile to the bathroom, she turned on the bathroom light and saw her attacker in full light. She and Ms. J. S. both identified the defendant in court as the rapist.

The man took the juvenile to Ms. J. S.'s bedroom where he raped her, as well as forcibly committing anal and oral sodomy with her for about 30 minutes. The juvenile then located Ms. J. S.'s car keys for the attacker, at his request, and he left in Ms. J. S.'s car.

In their investigation at the scene of the crime, the police recovered the already mentioned fingerprint as well as several hairs from the bedsheets. The fingerprint was identified as that of the defendant, and the hair samples were determined to be consistent with a specimen later taken from the defendant, although it is impossible to make an absolute identification through hair comparison. Ms. J. S.'s Oldsmobile was found with a flat tire six to eight blocks from the defendant's residence on March 14, 1977.

At trial, Marty Randolph testified that he was with the defendant on the evening of March 12, 1977. After leaving a local tavern, they returned to the defendant's apartment. When the defendant got back into Randolph's car, Randolph heard the jingling of keys. The defendant instructed the wit-

ness to drive to a certain street and then asked to be let out at a location within two to three blocks of Ms. J. S.'s apartment, approximately one-half hour prior to the attack. The defendant said that he was going to visit friends and would not need a ride home. Randolph saw the defendant again at about 11:00 a. m. the following morning and noticed a red mark on the defendant's neck. We also note that the defendant had been employed at the apartment complex, where Ms. J. S. resided, until approximately two weeks before the attack and that the complex manager testified that the defendant had had access to master keys to the apartment units.

The parties stipulated that an examination of Ms. J. S. by a Tulsa physician disclosed evidence of sperm and trauma in the internal and external genitalia as well as trauma to the rectal area. It was further stipulated that the juvenile suffered trauma to the genital and rectal areas, although there was no evidence of sperm. Included in the stipulations was the fact that tests for blood typing of sperm samples are available under certain conditions, but that they had not been performed on these samples. Further, the parties stipulated that Dr. Vammen, who performed the tests, would have testified that he would be unable to state whether the proper conditions had existed for blood grouping in this case.

■ The defendant first alleges that the trial court erred in allowing his prosecution and punishment for multiple offenses arising out of a single transaction, citing 21 O.S.1971, § 11, which reads in part as follows:

"[A]n act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, . . . but in no case can [it] be punished under more than one; and an acquittal or conviction and sentence under either one, bars the prosecution for the same act or omission under any other." (Footnote omitted)

It is the defendant's contention that the series of acts was in fact a single transac-

tion with but one objective, so that only one of the six charges should have been prosecuted. This argument is without merit. It is clear that each of the acts was distinct from the other and that the elements of proof of the different crimes did not overlap each other.

■ Over a period of three hours, the defendant completed the following crimes: He committed burglary in the first degree when he broke into and entered the victim's dwelling in the nighttime, wherein slept the two victims; and he did so with the intention to commit a crime, 21 O.S.1971, § 1431. The crime of burglary is complete upon entry, and the evidence of the completion of the intended crime is only *evidence* of intent; it is not a necessary element of burglary. *Smith v. State*, Okl.Cr., 347 P.2d 232 (1959), and *Lyons v. State*, Okl.Cr., 516 P.2d 283 (1973). The crime of rape in the first degree was completed as to both victims by the forcing of sexual intercourse through threats of immediate and great bodily harm accompanied by the apparent power of execution; furthermore, the juvenile was a female under the age of 14 and the defendant was a male over the age of 18. Title 21 O.S.1971, § 1114. Upon the completion of the acts of oral and anal intercourse with both females, the crime of sodomy was accomplished, 21 O.S.1971, § 886. Finally, the defendant used Ms. J. S.'s automobile, without her freely given consent, and with the intention to deprive her of that possession at least temporarily, in violation of 47 O.S. 1971, § 4–102. Clearly, each of these crimes consists of separate and distinct elements, none of which merge into the proof of any of the others.

■ In his second argument on appeal, the defendant urges this Court to hold that the admission of the in court identification of the defendant by the two victims was error. A review of the transcript of the pretrial hearing on this motion discloses the correctness of the trial court's ruling. The guidelines suggested in *Thompson v. State*, Okl.Cr., 438 P.2d 287 (1968), were substantially followed by the police, including our recommendation that counsel be present to safeguard the rights of the accused and our suggestion that a photograph of the participants be taken. There is no prohibition against conducting both photographic and in person lineups, as the defendant suggests. Notwithstanding the apparent attempt by the investigating officers to comply with due process in conducting the lineup, there was a generous opportunity for the two victims to observe the defendant at the scene of the crime, making that an independently reliable source of identification. See *Green v. State*, Okl.Cr., 594 P.2d 767 (1979), and *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). We hold that their subsequent in court identification of the defendant was properly admitted for the jury's consideration.

In his third and fourth assignments of error, the defendant alleges that the District Attorney argued outside the scope of the evidence in his closing argument. First, he complains of the prosecutor's reference to the lineup, which had not been mentioned by the State in the presentation of its case. However, it has long been held that:

"Where counsel for defendant goes outside the record and makes argument not supported by the evidence, then improper argument by the counsel for the state in answering such argument, unless clearly prejudicial, affords no grounds for a reversal, since the argument of defendant's counsel invites or provokes the objectionable argument." (Citations omitted) *Woodruff v. State*, 56 Okl.Cr. 409, 41 P.2d 129, 130 (1935).

In his closing statement, defense counsel stated:

". . . You had a witness . . . that pointed at that man. Have you heard any testimony, any evidence from that witness stand to prove to you that they ever did anything more than look at one man and point at one man? Have you heard any evidence that they picked him out of a group of people? . . ."

Minutes later, he continued, "Wouldn't you rather hear them say I picked him out of ten people?"

■ It is apparent from the record that defense counsel was deliberately attempting to mislead the jury into believing that there had been no pretrial identification. The prosecutor's later statements regarding the lineup were clearly an attempt to improperly bring before the jury evidence of a pretrial identification, a fact not presented to them by the evidence. The characteristics of those pretrial identifications were therefore not subject to cross-examination by the defense. Had these comments been injected spontaneously, they clearly would have been error. However, they were merely a response to the defense's own closing statements, and, as such, any error was invited by the defendant. See *Parkhill v. State*, Okl.Cr., 561 P.2d 1386 (1977).

■ Additionally, the defendant argues that the District Attorney commented on the defendant's failure to testify. However, a careful review of the record indicates that the statements were no more than a reference to the defendant's failure to present *any* evidence to refute the State's case. The statements did not constitute a comment on his failure to testify. See *Johnson v. State*, Okl.Cr., 478 P.2d 969 (1970).

■ The final proposition raised by the defendant is that the trial court erred in instructing and sentencing the defendant under the provisions of 21 O.S.Supp.1977, § 51(B), which has since been held unconstitutionally vague. See *Thigpen v. State*, Okl.Cr., 571 P.2d 467 (1977). Pursuant to this decision, it has been our policy to modify sentences assessed under it, when appropriate. The defendant argues that our modifications thus deprive the defendant of his right to assessment of punishment by a jury, 22 O.S.1971, § 926. However, by statute, this Court is empowered with the authority to modify sentences 22 O.S.1971, § 1066, and in doing so we do not abrogate any rights of the defendant.

Of the supplemental allegations raised by the defendant in his pro se brief, only one merits discussion. The others have been considered by this Court and rejected either as repetitive or unwarranted. Therefore, we reject the following arguments for reversal: That the defendant suffered a denial of due process and was compelled to incriminate himself when he had to present his own evidence in support of his motion for new trial, which was based upon incompetent counsel; that denial of the motion for new trial was error; that the defendant was denied his right to a fair hearing by an impartial judge; that the extraction of samples of body hair from the defendant was an illegal search and seizure; that the trial court abused its discretion in running the defendant's sentences consecutively rather than concurrently.

■ One allegation of error remains for our consideration. In his pro se brief, the defendant deals with the trial court's denial of his motion to disclose sperm slides taken from the victims. At the hearing on the motion, the defense counsel asked the court to have one or more of the sperm slides analyzed for blood type. The District Attorney countered that the defense should seek the information from the doctor who had performed the examinations of the slides. The defense replied that he had already talked with the doctor, who had been uncooperative. The court suggested that the defendant use his subpoena powers and denied the motion. At trial, the parties stipulated to the fact that no blood grouping tests had been conducted upon the sperm found on the examination of Ms. J. S., but that, under some conditions, such tests are available to medical science. Further, the parties stipulated that the doctor would not be able to state whether or not the sperm samples taken at the time of the rape were viable test samples.

The United States Supreme Court has held that a defendant is denied his due process when the State suppresses evidence which that defendant has requested and which is favorable to him. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The applicability of *Brady* depends upon our interpretation of "favorable evidence." Can it be said that the sperm samples constituted favorable evidence, or do they fall closer to the category of evi-

dence having speculative value? This Court held in *Wing v. State*, Okl.Cr., 490 P.2d 1376, 1383 (1971), that "We will not reverse a conviction on the mere speculation that a denied pretrial inspection and disclosure *might* have been helpful to the defendant," (emphasis added) citing *Stevenson v. State*, Okl.Cr., 486 P.2d 646 (1971). However, in *Wing*, the defendant failed to demonstrate prejudice resulting from the trial court's denial of his pretrial motion. In the case at hand, there is the potential for great prejudice, that is, if the blood grouping were to eliminate the defendant.

We cannot find, at this point, that the sperm samples were viable specimens for blood grouping at the time of the examination of victim Ms. J. S. Nor do we know, even if they had been appropriate on March 13, that they could have been blood typed on May 23, at the time of the hearing on the motion to produce. Certainly, the defendant should have sought a continuance and applied to this Court for a writ mandating the lower court to have blood groupings run on the sperm slides. *Wing v. State*, supra. We note, also, that the subpoena power of the defendant does not extend to conducting medical examinations and analyses. Title 22 O.S.1971, § 703. Consequently, the court erred in denying the motion and suggesting that the defendant use a subpoena to gain access to the samples. However, as the matter is now presented to us, we can say no more than that the possibility exists that the sperm *could have* been tested and the results *may have* resulted in a total defense to this defendant. The potential is too far removed from the fact.

This conviction rests upon overwhelming evidence, particularly the identification of the defendant by both victims and the identifiable fingerprint taken from the baby oil bottle in the victims' apartment matching the defendant's fingerprint. We cannot say, in the face of this great weight of evidence, that this defendant suffered any prejudice or that the test results, had there been any, would have inured to his benefit.

What we can and do say is that, in the investigation of a rape, the better practice would be for the officers to request that the sperm sample taken from the victim be tested also for blood type, if and when that is scientifically possible. This would simplify the investigation of the crime for the State and might tend to exonerate any accused person not falling within that blood group.

We therefore *AFFIRM* this case and *MODIFY* it on the basis of the obvious punishment assessment by the jury according to an unconstitutional statute, 21 O.S. Supp.1977, § 51(B). The punishments, as modified, are as follows: Life imprisonment on each of the convictions for Rape in the First Degree; fifteen (15) years' imprisonment for each of the Sodomy convictions; twenty (20) years' imprisonment for the Burglary conviction, and ten (10) years' imprisonment for the Unauthorized Use of a Motor Vehicle conviction. As *MODIFIED* the judgments and sentences are *AFFIRMED*.

CORNISH, P. J., and BUSSEY, J., concur.