Robert A. BRECHEEN, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–83–710.

Court of Criminal Appeals of Oklahoma.

Jan. 27, 1987.

Rehearing Denied March 3, 1987.

of his wife, Marie Stubbs, and then he immediately heard a gunshot. He saw his wife, who was in the livingroom, fall to the floor. He reached for his gun and rolled off of his bed to the floor. The intruder came to the bedroom door and fired three shots into the empty bed. As the intruder turned to leave, Mr. Stubbs fired at him. The man reached the porch and fired two more shots through the storm door at Mr. Stubbs. Mr. Stubbs again fired at him. He later saw the intruder exit the front gate and walk north.

Though Mr. Stubbs was unable to identify the intruder, he could describe him as wearing a light or tan shirt. When the police arrived, they found appellant severely wounded lying by his truck approximately two hundred yards north of the Stubbs' residence.

Appellant's defense was that some black man had entered his truck as he left a bar. This man made him go to the Stubbs' residence and carry the rifle to the door. When Mrs. Stubbs opened the door, the black man pushed him inside and the gun accidentally went off and killed her. Mr. Stubbs did not see but one person at his home the evening of the killing, but did testify that he was acquainted with appellant who had recently approached him for a loan.

Thomas Purcell, Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Jean M. LeBlanc, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Robert A. Brecheen was convicted by a jury of Murder in the First Degree and Burglary in the First Degree. Punishment was assessed as the death penalty for the homicide and twenty years' imprisonment for the burglary.

During the evening of March 27, 1983, Hilton Stubbs was awakened by the scream

### I

Appellant first assigns as error the trial court's refusal to grant him a change of venue for trial. The motion was primarily based upon the fact that the Stubbs owned a local clothing store and practically all veniremen knew who the Stubbs were. The State did not present evidence in opposition to the motion.

Practically all those who were acquainted with the Stubbs were so because they had traded in their store. Some knew policemen and prosecutors. Practically all had read newspaper accounts of the incident.

The fact that jurors know the victims of a crime does not in itself demonstrate the need for a change of venue, just

as the mere existence of pretrial publicity is insufficient. It is only when a criminal defendant establishes by clear and convincing evidence that a fair trial is a virtual impossibility that such a motion should be granted. *Thomsen v. State*, 582 P.2d 829 (Okl.Cr.1978). A defendant is not entitled to a jury which is unacquainted with the victims or facts of his or her case.

■ An exhaustive voir dire was conducted at trial. Those who served on the jury stated they could fairly and impartially judge the case on the evidence presented. Those who formed opinions concerning appellant's guilt or doubted their ability to serve impartially were excused. We find there was adequate safeguard of the jury process, *Frye v. State*, 606 P.2d 599 (Okl. Cr.1980), and the need for a change of venue was not established.

## II

A venireman named Price was voir dired concerning his views of the death penalty. Initially he stated he was against the death penalty but would "go along with the rest of them" if appellant was convicted. Upon more penetrating examination, he stated he could not imagine a case in which he would vote for a sentence of death, regardless of the facts or the law. Appellant contends that since Price never retracted his statement that he would go along with the other jurors, his position concerning the death penalty was not clear and he should not have been excused for cause.

■ A juror's prejudice against the death penalty need not be demonstrated with "unmistakable clarity" before excusal for bias is proper. *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985). If a prospective juror's view of the death penalty would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath," he may properly be excused from capital sentencing juries. *Id.* Appellant was not denied a trial by an impartial jury because Price was excused.

## III

■ Appellant contends there was insufficient evidence of a "breaking" to sustain the burglary conviction. But we disagree. It was his testimony at trial that Mrs. Stubbs came to the front door of her home and with rifle in hand, he and the black man pushed their way into the house. Photographs introduced at trial show that there was a glass and screen door as well as a wooden door at the front of the house on this March evening. Appellant testified that Mrs. Stubbs just backed away from them and then screamed. He admitted that they were not invited to come in by the victim.

The statute defining Burglary in the First Degree provides that the offense is committed by:

Every person who breaks into and enters the dwelling house of another, in which there is at the time some human being, with intent to commit some crime therein, either:

1) By forcibly bursting or breaking the wall, or an outer door, window, or shutter of a window of such house or the lock or bolts of such window or shutter; or

2) By breaking in any other manner, *being armed with a dangerous weapon* or being assisted or aided by one or more confederates then actually present.... (Emphasis added).

21 O.S.1981, § 1431. Appellant's own testimony provided sufficient circumstantial evidence of a "breaking" under the statute. Where there is evidence from which the jury can rationally conclude that a defendant is guilty of the charged offense, this Court will not interfere with their verdict. *Spuehler v. State*, 709 P.2d 202 (Okl.Cr. 1985).

## IV

■ He further argues that the jury was improperly instructed concerning the element of "breaking." In this regard, the court advised the jury that:

[T]he word 'breaking' means any act of physical force, however slight, by which obstructions to entering are removed.

Breaking may also occur when entry is obtained by any other manner, *such as fraud, trick, or threats* being armed with a dangerous weapon. (Emphasis added.)

The definition given is that set forth in the statute except for the italicized portion. The words "such as fraud, trick, or threats," were evidently added by the trial judge as an explanation of the statutory language "in any other manner." This is commonly referred to as "constructive breaking" and we hold that 21 O.S.1981, § 1431 encompasses this definition of breaking.

In *Tice v. State*, 283 P.2d 872 (Okl.Cr. 1955), this Court stated in its syllabus that breaking may be either actual or constructive. This definition of breaking is also consistent with the common law. 4 *Blackstone Commentaries*, p. 226 (Christian's 15th Ed.1809). Therefore, the instruction correctly stated the applicable law. *Johnson v. State*, 621 P.2d 1162 (Okl.Cr. 1980).

## V

Appellant further contends in regard to the "breaking" instruction that the prosecutor misstated the law by arguing to the jury constructive breaking. Because of our disposition of the previous assignment, we hold this to be without merit.

## VI

Next, appellant assigns as error the refusal of the trial judge to grant a new trial based upon juror misconduct. Appellant for the first time suggested at the hearing on his Motion for New Trial that one of the jurors selected acted improperly at trial by telling a member of the victim's family that the case was in the bag since she got on the jury panel. The issue was not raised in the original or an amended motion for new trial. Defense counsel never divulged to the trial court the name of the witness or of the juror involved. Due to the surprise

of the assignment and of the proffered evidence, the trial court refused to hear it because the assignment was not properly preserved.[1]

This Court remanded this cause to the trial court to conduct an evidentiary hearing. At this hearing, the district court took the testimony of the juror alleged to have made the statement, the person to whom it was allegedly made, the person who overheard it, and that of five other jurors of the panel. The trial judge made a finding against juror misconduct. All the testimony except that of the person who allegedly overheard the statement indicated that it had not taken place. The individual who made the allegation of misconduct had a son who was married to appellant's sister. The trial judge noted that her sympathy toward the appellant may have led her to believe she heard something which she had not actually heard.

■ . A criminal defendant has a right to an impartial jury. Okla. Const. art. 2, § 20. Juror misconduct is an appropriate ground for granting a new trial. 22 O.S. 1981, § 952. To be entitled to a new trial, a defendant must affirmatively show that the juror was actually prejudiced against him and that he suffered an injustice as a result. *Parks v. State*, 457 P.2d 818 (Okl. Cr.1969); *Odell v. State*, 89 Okl.Cr. 184, 206 P.2d 229 (1949). The evidence of misconduct submitted in support of appellant's motion for new trial was insufficient to prove actual prejudice. The trial court allowed five of the jurors to be called and questioned concerning the attitude and behavior of the allegedly errant juror. They unanimously indicated she did not appear prejudiced against the appellant or for the victim. The trial court did not abuse its discretion in denying the motion.

## VII

Appellant next contends that the trial court erred in not granting defense counsel

---

1. This rule requiring issues to be preserved in a motion for new trial was subsequently changed.

22 O.S.Supp.1986, § 1054.1.

access to the victim's husband's home where the homicide had occurred. He alleges that this denied him due process of law.

The hearing transcript reveals that the trial judge did not believe he had the authority to grant defense counsel the right to enter the private residence. He therefore declined to do so. The judge suggested, and appellant's counsel agreed, that Mr. Stubbs should just be requested to allow a viewing. The record does not indicate the results.

Appellant failed at the hearing, and now on appeal, to provide authority in support of his request. He concedes that there are no cases on point with his position. He analogizes a case in which this Court held a trial court erred in not ordering exhumation of the bodies of two murder victims to allow ballistic tests to be made. *Quinn v. State*, 54 Okl.Cr. 179, 16 P.2d 591 (1932). That case is clearly distinguishable since it concerned the gathering of important evidence not otherwise obtainable. Here there were photographs and a diagram introduced which portrayed the crime scene.

■ The record does not disclose whether trial counsel, who is not appellate counsel, was denied access to the property. He did not object to the course of action suggested by the trial court. Appellant has failed to establish preserved error which injured him. *Smith v. State*, 656 P.2d 277 (Okl.Cr.1982).

### VIII

The trial court allowed the prosecutor on rebuttal to show a film to the jury from a pretrial news broadcast which showed appellant moving up and down the arm which was shot by Mr. Stubbs. The defense had introduced testimony from a doctor who had examined appellant and who stated that appellant would have been incapable of firing shots back at Mr. Stubbs because of the injury to his arm. On rebuttal, the State presented the testimony of one of the doctors, Dr. Scott Malowney, who treated appellant the night he was shot. He stated that if appellant was able to move his arm

up and down, he was probably able to use his arm immediately following his injury. At the time the film was made, and at trial, appellant wore a prosthesis on his wrist and fingers. Appellant complains that this was misleading because he could not have had the same range of motion immediately following the injury when he was without the prosthesis. Appellant also argues that the film should not have been admitted because it was irrelevant and it emphasized pretrial publicity. We disagree.

■ Appellant presented evidence that he would have been unable to shoot his rifle at Mr. Stubbs due to the injury Stubbs inflicted. The evidence was relevant to refute this assertion, his ability to shoot having been made a material fact. *Cherry v. State*, 544 P.2d 518 (Okl.Cr.1975). As previously discussed, almost all the jurors were aware of pretrial publicity but stated they could set aside any opinions they held. Also, the appellant presented his own expert's testimony and cross-examined the State's expert concerning the change in his ability to use his arm without the prosthesis.

The admission of evidence at trial is a matter within the trial court's discretion. The ruling will not be disturbed in the absence of abuse of that discretion. *Owens v. State*, 665 P.2d 832 (Okl.Cr.1983). We do not agree with appellant that the trial court abused its discretion.

### IX

Appellant contends that error occurred when the State called a rebuttal witness whose testimony tended to impeach the credibility of appellant's fiance, Sherry McComber. The testimony of Ms. McComber concerning whether she and appellant had entered a contract in Ada, Oklahoma to purchase wedding rings was disputed by the jeweler, Mr. Criswell, with whom they dealt.

■ We agree with appellant that the issue of whether an agreement to purchase the rings had actually been reached was a collateral issue and not a proper

subject for rebuttal. *Robison v. State*, 430 P.2d 814 (Okl.Cr.1967). However, we do not find actual prejudice to have resulted to appellant. *Mills v. State*, 594 P.2d 374 (Okl.Cr.1979). Appellant's testimony contradicted Ms. McComber's on this point and her statement appears to have been only a misunderstanding of the transaction. We do not agree that a great deal of confusion was caused for the jurors. This assignment is without merit.

## X

The defense called Dr. Lannie Anderson to testify concerning the injury to appellant's arm. Dr. Anderson is the surgeon who attempted to repair the damage to appellant's arm caused when Mr. Stubbs shot at the intruder. Mr. Stubbs said the intruder fired two more shots toward the door after he left the house. Appellant tried to prove by Dr. Anderson's testimony that he was unable to fire the .22 calibre rifle because of his wound.

On rebuttal, the State called Dr. Malowney to testify. He was the doctor who treated appellant in the emergency room in Ardmore and again after he returned from Oklahoma City where he had had surgery. He was also married to a woman who worked for the prosecutor. This fact was not made known to defense counsel. Appellant now asserts that this was exculpatory evidence which should have been made known to him citing *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

 While impeachment evidence may be exculpatory and require disclosure, *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), it must also be material. In Bagley, the Supreme Court held that "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." 105 S.Ct. at 3384. The mere possibility that an item of undisclosed information might have helped the defense or affected the outcome does not establish materiality. *United States v.*

*Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

As mentioned earlier, Dr. Malowney was called as a rebuttal witness and not in the State's case-in-chief. He was not sought out by the State as an expert witness, but happened to be one of the doctors treating appellant for his gunshot wound.

 However, as an expert witness, he based his opinion on medical science. The fact that his wife worked in the district attorney's office does not indicate that Dr. Malowney had a direct, personal stake in appellant's conviction. *Compare Bagley*, *supra* (witnesses were to be compensated for their undercover work according to government's satisfaction with the results). There was only a possibility that this information might have helped the defense.

## XI

Appellant cites a number of comments made by the prosecutor and contends that they denied him due process of law. A review of the record reveals that there were no objections made to any of the cited comments and no requests that the trial court admonish the jury to disregard them. Due to appellant's failure to preserve error, we will review only for fundamental error. *Rushing v. State*, 676 P.2d 842 (Okl.Cr. 1984). Finding none, we hold this assignment to be without merit.

## XII

Police officers arrived at the Stubbs' residence the evening of the homicide to find appellant lying by his truck in a weakened condition. He was taken to a hospital emergency room with a police officer in his company. After about thirty minutes, he made exculpatory statements concerning the shootings while in a "semi-conscious" state. The police officer did not interrogate appellant and testified at trial that Brecheen did not appear to be fully conscious until ten minutes later.

Appellant contends that since the statement was made while he was only semi-

conscious, it was not voluntary and should not have been admitted at trial.

 Appellant does not claim that he was interrogated by the officer. Had he been, the answers may not have been admissible. *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). When an individual freely and voluntarily offers relevant statements in a partly conscious state, the issue is the weight to be given the statements. This is a factor for the jury to decide. *People v. Duncan*, 72 Cal. App.2d 247, 164 P.2d 313 (1945); *Sutton v. State*, 237 Ga. 418, 228 S.E.2d 815 (1976). The jury was properly instructed that they should decide the weight to be given to his statements if they found the statements were made freely and voluntarily, i.e. "without coercion, force, threats or duress or inducement...." There was no error.

### XIII

The day after appellant was wounded, he made a second statement to another police officer who was standing guard at the hospital. He contends that the officer's presence in his weakened condition amounted to interrogation, and that he could not have made a voluntary statement. He claims his will to remain silent was overborne by the psychological pressure, citing *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

Appellant also contends that neither statement should have been admitted because their probative value was outweighed by their prejudicial effect. 12 O.S. 1981, § 2403. This contention is premised on the fact that appellant's weakened condition caused the statements to be worthless. Both statements were exculpatory, but also conflicted somewhat with his testimony at trial. Both pertained to the course of events at the Stubbs' house the night of the homicide.

 Again, the weight to be given each statement was for the jury to decide if the jury initially found them to be voluntary, as in fact the trial judge had. See the previous assignment. If there was psycho-

logical pressure, it was self-induced and not purposely imposed by law enforcement officers. It was certainly not the type the Supreme Court held to have disqualified the statement in *Townsend v. Sain*, supra.

### XIV

 The trial court gave the Uniform Jury Instruction (OUJI–CR813) concerning voluntariness of statements. Appellant contends it was an incorrect instruction because it did not address a person's state of consciousness. Appellant did not object to the giving of this instruction at trial, nor did he offer a proposed instruction. Thus, error was not preserved. *Stratton v. State*, 643 P.2d 645 (Okl.Cr. 1982). Upon our review we find the instruction given adequately apprised the jury of the law concerning voluntariness. See the two previous assignments. There was no error.

### XV

This Court held in *Knott v. State*, 432 P.2d 128 (Okl.Cr.1967), that when the State introduces into evidence the confession of an accused, it is bound by exculpatory statements contained therein unless shown by the evidence to be false. Appellant contends on appeal that the trial court erred in not giving this instruction to the jury as he had requested at trial.

 While appellant cites *Knott* in support of his argument, we specifically limited our holding therein to instances where the State introduces the confession in its case-in-chief, and where the accused does not testify. Appellant testified at trial and denied making both statements. The instruction was not warranted upon these facts.

### XVI

 Appellant next argues that reversal was required by an accumulation of errors at trial. We have held numerous times that an accumulation of assignments of error will not warrant reversal if the individual assignments do not. *E.g.,*

*Woods v. State,* 674 P.2d 1150 (Okl.Cr. 1984).

### XVII

▇▇▇ Appellant, for the first time on appeal, argues that the trial court erred in not instructing the jury they could not consider impeachment evidence as proof of guilt or innocence. Yet appellant failed to object to the lack of such an instruction at trial and did not submit one to the trial court. This resulted in waiver at trial. *Dodson v. State,* 674 P.2d 57 (Okl.Cr.1984). We note also that the impeaching evidence did not comprise a substantial portion of the State's case as it had in *Leeks v. State,* 95 Okl.Cr. 326, 245 P.2d 764 (1952). *Compare Sykes v. State,* 572 P.2d 247 (Okl.Cr. 1977) (if not requested and not substantial portion of State's case, not fundamental error).

### XVIII

▇▇▇ Appellant asserts he was denied effective assistance of counsel as guaranteed by the Sixth Amendment because his attorney failed to make objections during the prosecutor's closing argument or to request certain instructions be given to the jury. Such a general assignment of ineffectiveness does not begin to meet the test and standards of constitutional error established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Appellant must not only demonstrate a serious deficiency in counsel's performance, he must also show the deficiency prejudiced the defense so seriously as to make the result of trial unreliable. *Id.; Coleman v. State,* 693 P.2d 4 (Okl.Cr.1984).

▇▇▇ We have reviewed the record and cannot say that trial counsel's performance fell below that of reasonably effective counsel. *Johnson v. State,* 620 P.2d 1311 (Okl.Cr.1980).

### XIX

Appellant contends that there was no great risk of death to anyone other than the homicide victim and that to find the existence of this aggravating circumstance would be an overbroad and unconstitutional application of Oklahoma's death penalty statutes. He urges us to adopt the "distinct act" doctrine applied by the Georgia Supreme Court.[2] He claims that this is the only interpretation of this aggravating circumstance which can pass constitutional muster.

▇▇▇ This Court has considered cases of similar facts to this one and have upheld the finding of this aggravating circumstance. In both of the following cases, the second person put at risk was not in the immediate vicinity of the party killed: *Ross v. State,* 717 P.2d 117, (Okl.Cr.1986) and *Cartwright v. State,* 695 P.2d 548 (Okl.Cr. 1985), *cert. denied,* —— U.S. ——, 105 S.Ct. 3538, 87 L.Ed.2d 661. In *Ross,* we noted also that the United States Supreme Court has upheld cases in which the sentence of death was so assessed under a statute similar to Oklahoma's. 717 P.2d at 123. This assignment is without merit.

### XX

▇▇▇ Appellant requests this Court to compare his sentence to that imposed in similar cases, claiming it is disproportionate. Such a comparison is no longer required nor necessary. He cites us to cases in which the individual did not receive the death penalty. Appellant fails to take into account that the juries in those cases may have found the mitigating circumstances exceeded the aggravating. In such a case, the death penalty may not be imposed. 21 O.S.1981, § 701.11.

Additionally, the Legislature recently amended the review this Court is to make in death cases by deleting the proportionality review. 21 O.S.Supp.1986, § 701.13.

---

2. The United States Supreme Court mentioned the statutory provision in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 2939, 49 L.Ed.2d 859 (1976). It requires that a weapon or device be used which in fact endangers more than one person at a time. Appellant argues that this circumstance could not be present in his case because his .22 caliber rifle was not powerful enough that a projectile could have exited the victim's body.

See *Foster v. State*, 714 P.2d 1031 (Okl.Cr. 1986), *cert. denied*, — U.S. —, 107 S.Ct. 249, 93 L.Ed.2d 173.

## XXI

█ Appellant next assigns as error the trial court's failure to give a particular instruction listing mitigating circumstances. At trial, appellant did not object to the instructions given nor request and submit any additional ones. Therefore, potential error was not preserved. *Dodson v. State*, 674 P.2d 57 (Okl.Cr.1984).

The instructions given accurately stated the applicable law. *Johnson v. State*, 621 P.2d 1162 (Okl.Cr.1980). There was no error.

## XXII

Appellant contends the evidence of mitigating circumstances outweighed that of the one aggravating circumstance the jury found to exist.

█ The jury was specifically instructed that to be authorized to assess the death penalty, they must find an aggravating circumstance to exist beyond a reasonable doubt and that the aggravating circumstance outweighed the mitigating circumstances. 21 O.S.1981, § 701.11. We find upon our review of the evidence that a rational trier of fact could have found beyond a reasonable doubt that appellant knowingly created a great risk of death to more than one person and that this circumstance was not outweighed by mitigating circumstances. *Spuehler v. State*, 709 P.2d 202 (Okl.Cr.1985). There is no error.

## XXIII

Appellant contends that Oklahoma's death penalty statutes in general (21 O.S. 1981, §§ 701.9–701.13) are being applied in an overbroad and, therefore, unconstitutional manner. We have upheld the application of these statutes against such charges in a number of cases: *Liles v. State*, 702 P.2d 1025 (Okl.Cr.1985), *cert. denied* — U.S. —, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986); *Banks v. State*, 701

P.2d 418 (Okl.Cr.1985); *Nuckols v. State*, 690 P.2d 463 (Okl.Cr.1984), *cert. denied*, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985); *Boutwell v. State*, 659 P.2d 322 (Okl.Cr.1983). Appellant has not added any new light to cause us to change these holdings.

## XXIV

█ As appellant's final assignment, he charges that the double jeopardy protections of the federal and the state constitutions are violated by his being convicted of both Burglary with Intent to Commit Murder and of Murder from the same transaction. We have previously held that burglary and other offenses committed within the structure burgled do not merge, and conviction of both does not violate double jeopardy protections. *Ziegler v. State*, 610 P.2d 251 (Okl.Cr.1980). The burglary is complete upon entry with intent to commit a crime. 21 O.S.1981, § 1431. The offenses committed after entry are separate and distinct.

## XXV

Our final review is assigned by 21 O.S. Supp.1986, § 701.13(C). As previously stated, we find that the evidence supports the jury's finding of the statutory aggravating circumstance that the appellant knowingly created a great risk of death to more than one person; that being Mr. Stubbs and the homicide victim, Mrs. Stubbs. We do not find the sentence to have been imposed under the influence of passion, prejudice, or any other arbitrary factor.

Finding no error warranting reversal or modification, judgments and sentences are AFFIRMED.

BRETT, P.J., concurs.

PARKS, J., specially concurring.

PARKS, Presiding Judge, specially concurring:

Although I concur in the affirmance of the judgment and sentence of the appel-

lant, I am compelled to address several instances of improper conduct on the part of the District Attorney for Carter County. First, the improper appeals to societal alarm asserting that, unless the appellant was punished, the community, county and State would be threatened with "chaos and anarchy" are clearly improper and unnecessary. *See Cobbs v. State,* 629 P.2d 368, 369 (Okl.Cr.1981). *See also Henderson v. State,* 716 P.2d 691, 693 (Okl.Cr.1986) (Parks, P.J., concurring in part, dissenting in part). Second, the prosecutor improperly asked the jury to punish the appellant "as vengeance for the family that is specifically hurt, vengeance for the community to set an example ..." *See Scott v. State,* 649 P.2d 560, 564 (Okl.Cr.1982) ("The vindication of community outrage has been criticized by this Court in *Franks v. State,* 636 P.2d 361 (1981).").

It is difficult to understand why the State would risk reversal or modification by making such clearly improper and unnecessary comments during closing argument. However, in light of the strong evidence of guilt, the failure to make timely objections and requests for admonishments to disregard, and the failure to show prejudice, it is unnecessary to reverse or modify the conviction. *See Elvaker v. State,* 707 P.2d 1205, 1207 (Okl.Cr.1985);

*Brodbent v. State,* 700 P.2d 1021, 1022 (Okl. Cr.1985).

I also write separately to express my view that the application of 21 O.S.Supp. 1985, § 701.13(C), which became effective July 16, 1985, to cases pending on appeal at the time the statute was passed renders the enactment an *ex post facto* law. *See Green v. State,* 713 P.2d 1032, 1041 n. 4 (Okl.Cr.1985). *See also Foster v. State,* 714 P.2d 1031, 1042 (Okl.Cr.1986) (Parks, P.J., specially concurring). Nevertheless, I have compared the sentences imposed herein with those previous cases either affirmed[1] or modified[2] by this Court, and find the sentence to be proper.

**1.** *Smith v. State,* 727 P.2d 1366 (Okl.Cr.1986); *Thompson v. State,* 724 P.2d 780 (Okl.Cr.1986); *Walker v. State,* 723 P.2d 273 (Okl.Cr.1986); *VanWoundenberg v. State,* 720 P.2d 328 (Okl.Cr. 1986); *Newsted v. State,* 720 P.2d 734 (Okl.Cr. 1986); *Brewer v. State,* 718 P.2d 354 (Okl.Cr. 1986); *Ross v. State,* 717 P.2d 117 (Okl.Cr.1986); *Bowen v. State,* 715 P.2d 1093 (Okl.Cr.1984); *Foster v. State,* 714 P.2d 1031 (Okl.Cr.1986); *Green v. State,* 713 P.2d 1032 (Okl.Cr.1985); *Liles v. State,* 702 P.2d 1025 (Okl.Cr.1985); *Banks v. State,* 701 P.2d 418 (Okl.Cr.1985); *Cooks v. State,* 699 P.2d 653 (Okl.Cr.1985); *Cartwright v. State,* 695 P.2d 548 (Okl.Cr.1985); *Brogie v. State,* 695 P.2d 538 (Okl.Cr.1985); *Stout v. State,* 693 P.2d 617 (Okl.Cr.1984); *Nuckols v. State,* 690 P.2d 463 (Okl.Cr.1984); *Robison v. State,* 677 P.2d 1080 (Okl.Cr.1984); *Dutton v. State,* 674 P.2d 1134 (Okl.Cr.1984); *Stafford v. State,* 669 P.2d 285 (Okl.Cr.1983); *Coleman v. State,* 668 P.2d 1126 (Okl.Cr.1983); *Stafford v. State,* 665 P.2d 1205 (Okl.Cr.1983); *Davis v. State,* 665 P.2d 1186 (Okl.Cr.1983); *Ake v. State,*

663 P.2d 1 (Okl.Cr.1983); *Parks v. State,* 651 P.2d 686 (Okl.Cr.1982); *Jones v. State,* 648 P.2d 1251 (Okl.Cr.1982); *Hays v. State,* 617 P.2d 223 (Okl.Cr.1980); *Chaney v. State,* 612 P.2d 269 (Okl.Cr.1980), *modified on other grounds sub nom. Chaney v. Brown,* 730 F.2d 1334 (10th Cir.1984).

**2.** *Parker v. State,* 713 P.2d 1032 (Okl.Cr.1985); *Kelly v. State,* 692 P.2d 563 (Okl.Cr.1984); *Eddings v. State,* 616 P.2d 1159 (Okl.Cr.1980), *modified,* 688 P.2d 342 (Okl.Cr.1984); *Morgan v. State,* No. F–79–487 (Okl.Cr. Nov. 14, 1983) (Unpublished); *Johnson v. State,* 665 P.2d 815 (Okl. Cr.1982); *Glidewell v. State,* 663 P.2d 738 (Okl. Cr.1983); *Jones v. State,* 660 P.2d 634 (Okl.Cr. 1983); *Driskell v. State,* 659 P.2d 343 (Okl.Cr. 1983); *Boutwell v. State,* 659 P.2d 322 (Okl. 1983); *Munn v. State,* 658 P.2d 482 (Okl.Cr. 1983); *Odum v. State,* 651 P.2d 703 (Okl.Cr. 1982); *Burrows v. State,* 640 P.2d 533 (Okl.Cr. 1982); *Franks v. State,* 636 P.2d 361 (Okl.Cr. 1981); *Irvin v. State,* 617 P.2d 588 (Okl.Cr.1980).